THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JERRY FINKELSTEIN, Defendant.

Court of General Sessions of County of New York, January 21, 1953.

*Frank S. Hogan, District Attorney (Alfred J. Scotti, Irving Slonim* and *Bertram S. Sarafan* of counsel), for plaintiff.

*Harris B. Steinberg* for defendant.

VALENTE, J. This is an application to adjudge Jerry Finkelstein guilty of contempt of court for contumaciously and unlawfully refusing to answer legal questions before the Fourth Grand Jury, January, 1951, Term of this court, and to punish him therefor.

Mr. Finkelstein was called as a witness before this Grand Jury in connection with their investigation into an alleged $10,000 payment by John P. Crane, then president of the Uniformed Firemen's Association, in October, 1949, to Mayor William O'Dwyer, a candidate, at the time, for re-election. On the question of whether he had known of or had witnessed or discussed with Crane or anyone else the matter of a cash contribution to O'Dwyer by Crane, he testified unequivocally that he had not.

In the course of his testimony he was asked numerous questions calculated to ascertain whether he recalled an occasion in 1949 when Crane visited his home; whether on that occasion he left his home with Crane and entered a car at 96th Street and Park Avenue; whether, accompanied by Crane and the driver, a fireman who wore a hearing aid, he proceeded to Gracie Mansion; whether on that occasion he saw a large manila envelope in Crane's possession; and whether upon arriving at Gracie Mansion he saw Crane alone with O'Dwyer on the porch of Gracie Mansion. The answers of Mr. Finkelstein to this line of questioning were, in effect: " It could have happened, but I have no recollection of it; I don't remember." When the witness persisted in such answers, after being directed by the court to try to refresh his recollection and make more definite answers, the Grand Jury voted to cite him for contempt.

Five specifications are set forth in the moving papers and it is urged that such replies by the witness in each instance were tantamount to refusal to answer.

It is the contention of the People that the answer, " It could have happened, but I don't remember," is a device employed by the witness to avoid his obligation to testify truthfully before the Grand Jury and is tantamount to a willful refusal to answer the questions put to him, with a consequent obstruction to the administration of justice.

There can be no contempt unless the witness contumaciously refuses " to answer any legal and proper interrogatory " (Judiciary Law, § 750, subd. A, cl. 5). The phraseology " refusal of a witness to answer any legal and proper interrogatory " does not mean that any answer by a witness will constitute a compliance with this section. (*Matter of Finkel v. McCook*, 247 App. Div. 57, affd. 271 N. Y. 636; *Matter of Grand Jury, Co. of Kings [Reardon]*, 278 App. Div. 206; *United States v. Appel*, 211 F. 495.)

The issue then is: Do the answers made by the witness to the questions set forth in the five specifications offend the provisions of clause 5, of subdivision A of section 750 of the Judiciary Law?

In the course of the argument on the motion the court expressed interest in the answer of the witness to one question embodying all five specifications. Such question was framed and thereupon put to him by his attorney, the District Attorney, and the court, in that order. At the conclusion of the argument, request was made that decision be withheld on the application until the Grand Jury had an opportunity to recall the witness, repeat the question, and receive his answer to it. He did return to the Grand Jury on January 8, 1953, and the court has before it a transcript of his testimony, which, for the purpose of this application, is deemed marked in evidence and considered as part of People's Exhibit 1.

On that occasion he was specifically asked, among other questions, the following:

"Let me go further. If Crane testified that some morning in October 1949, he went to your home, met you there, left your apartment, entered an automobile parked in the vicinity of 96th Street and Park Avenue, rode to Gracie Mansion with you in this car driven by a third person, upon reaching Gracie Mansion he ascended the steps of the porch of Gracie Mansion and met with O'Dwyer within your view, and within your view gave O'Dwyer an envelope, a large manila envelope, would you say those events might have happened or happened? A I would say it didn't happen.

"Q What is that? A I would say it didn't happen.

"Q I don't get it. A I say it didn't happen."

Upon being asked the same question, except for the item "and within your view gave O'Dwyer an envelope, a large manila envelope," he replied that he didn't remember those events but they might have happened. True it is, in answer to a question substantially similar to this latter inquiry, posed by his attorney on the argument, he finally answered, "I'd swear it didn't happen." But this answer was made only after he first replied, "I couldn't say yes or no", after he protested that he was being called on to answer five questions, and after some urging by his attorney. When initially put to him by his attorney, his response to this question was in keeping with the answers offered throughout his examination before the Grand Jury.

In determining this issue the following tests have been held to apply:

In *United States* v. *Appel* (211 F. 495, 496, *supra*) it was held: " the only proper test is whether on its mere face, and without inquiring collaterally, the testimony is not a bona fide effort to answer the questions at all."

In *Matter of Finkel* v. *McCook* (*supra*) the court stated (p. 63) : " There is a distinction between the untruthful statement which does not clearly appear to be such from the face of the record but is uncovered only with the aid of extrinsic evidence and testimony which is so plainly inconsistent, so manifestly contradictory and so conspicuously unbelievable as to make it apparent from the face of the record itself that the witness has deliberately concealed the truth and has given answers which are replies in form only and which, in substance, are as useless as a complete refusal to answer."

In *People* v. *Kamell* (170 Misc. 868, affd. 258 App. Div. 723) the court held: " The test, as I see it, is that if the explanation or evidence given does not offend common sense and rational reasoning, but instills a doubt as to its truth or falsity, it is not contempt even though the falsity of it may be established by independent extrinsic evidence or by material facts at variance with it." (P. 874.)

This being a proceeding to punish for criminal contempt, the witness is entitled to the same rights that are accorded to a defendant on trial before this court, and he is entitled to the benefit of the presumption of innocence; and the burden is upon the People to prove him guilty beyond a reasonable doubt. (*United States* v. *Dachis*, 36 F. 2d 601.)

Summarizing, the witness cannot be found guilty of contempt for contumaciously and unlawfully refusing to answer a legal question unless the court is satisfied beyond a reasonable doubt that the answers of the witness per se are not indicative of a bona fide effort to answer, or indicate that the witness is concealing the truth, or that they offend common sense or rational reasoning.

All of the questions contained in the five specifications were questions calculated to jog the memory of the witness on the principal point of inquiry — whether $10,000 was passed by Crane to O'Dwyer — a point on which the witness emphatically stated he had no knowledge and in nowise participated.

Thus, the court is asked to hold the witness in contempt for the answer, " It could have happened; I don't remember ",

interposed by the witness to questions incidental to the main issue.

It should be noted that John P. Crane and Victor Wilder preceded Mr. Finkelstein in appearances before the Grand Jury. These witnesses gave testimony that made it mandatory for the District Attorney to call Mr. Finkelstein as a witness. In addition, the tenor of their evidence is such that, if believed, it suggests that not only did Mr. Finkelstein give false testimony but that he deliberately avoided his duty to give evidence.

With this testimony before it, the righteous indignation of the Grand Jury and the vigorous prosecution by the District Attorney are understandable. However that may be, in this instance a finding of contempt must be predicated solely on the answers of Mr. Finkelstein, without consideration of Crane's and Wilder's testimony. This is a safeguard which the law gives the witness, and the court has no authority or right to hold that Mr. Finkelstein lied or evaded because of the testimony of these other witnesses.

After carefully reading and considering all of the testimony of Jerry Finkelstein before the Grand Jury, the court cannot find that the witness unlawfully refused to answer questions within the meaning of clause 5 of subdivision A of section 750 of the Judiciary Law. The court must rule that the statement, " It could have happened, but I don't remember ", or words to that effect, is an answer. Such an answer may be as false as an unqualified " yes " or ": no " answer.

It may be that these answers of the witness are false, and it is neither illogical nor unreasonable for anyone to arrive at such a conclusion when Crane's and Wilder's testimony is considered. If the Grand Jury is satisfied from all the evidence before it, including Crane's and Wilder's testimony, that the answer, " It could have happened, but I don't remember " is false, then it is their duty to indict him for perjury. And on that issue he is entitled to a trial by jury.

It may be that Mr. Finkelstein failed to testify fully concerning the subject of inquiry, but if this is so, it was accomplished in a manner studiously calculated to preclude a finding of contempt.

Neither these possibilities nor any persuasion that may stem from the mood or the exigencies of the day — and the court must not be swayed by any of these factors — justifies a finding of contempt.

Meanwhile, it would indeed be refreshing and faith restoring if the witness were to consider whether he failed in his duty as a citizen, and, should he so conclude, return to the Grand Jury and make a frank statement of whatever he knows about the subject matter of their inquiry.

For the reasons indicated, the application is denied.