In the Matter of JOSEPH P. RYAN, Individually and as President of the International Longshoremen's Association, as President of the Atlantic Coast District of the International Longshoremen's Association and as a Member of the Joseph P. Ryan Association, Appellant and Respondent. FRANK S. HOGAN, as District Attorney of New York County, Respondent and Appellant.

Argued June 4, 1953; decided July 14, 1953.

*Seymour M. Waldman, Louis Waldman* and *Martin Markson* for appellant-respondent. I. The Appellate Division properly held that the production of petitioner's books and records, and working papers based thereon, by his personal accountant and

agent would compel him to be a witness against himself in violation of his rights under the Constitutions of the State of New York and the United States. (*Potter* v. *Beal*, 50 F. 860.) II. The compulsory production of petitioner's books, records and working sheets from the office of Morris J. Weinstein & Co. would violate the confidential relationship between petitioner and the accountants who were representing him before the Treasury Department. (*Lalance & Grosjean Mfg. Co.* v. *Haberman Mfg. Co.*, 87 F. 563; *Genet* v. *Ketchum*, 62 N. Y. 626; *Kellogg* v. *Kellogg*, 6 Barb. 116; *Cote* v. *Knickerbocker Ice Co.*, 160 Misc. 658; *Hollien* v. *Kaye*, 194 Misc. 821; *Sibley* v. *Waffle*, 16 N. Y. 180; *Matter of Putnam*, 257 N. Y. 140; *People ex rel. Mooney* v. *Sheriff of N. Y. Co.*, 269 N. Y. 291.) III. The working sheets of petitioner's personal accountant based on the ILA and Journal Account books and records may not be produced over petitioner's objection, irrespective of the existence of any constitutional or confidential privilege as to those books and records themselves. IV. The books and records of the International Longshoremen's Association and the Atlantic Coast District of the ILA, unincorporated associations of which petitioner is a member, may not be produced under subpœna where to do so would compel petitioner to be a witness against himself in violation of his constitutional rights. (*Martin* v. *Curran*, 303 N. Y. 276; *United States* v. *White*, 322 U. S. 694.) V. The records of the Journal Account are petitioner's personal records and not those of the union, and hence are subject to his claim of privilege. VI. The subpœna duces tecum requiring the production of all books and records of the International Longshoremen's Association is unreasonably broad and sweeping and constitutes an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and section 12 of article I of the New York Constitution. (*Boyd* v. *United States*, 116 U. S. 616; *Hale* v. *Henkel*, 201 U. S. 43; *Fed. Trade Comm.* v. *Amer. Tobacco Co.*, 264 U. S. 298; *Jones* v. *Securities Comm.*, 298 U. S. 1; *Matter of Pacific Ry. Comm.*, 32 F. 241; *Wolf* v. *Colorado*, 338 U. S. 25.) VII. The order of the Court of General Sessions denying petitioner's application to quash is appealable. (*People* v. "*John Doe*", 247 App. Div. 324, 272 N. Y. 473; *People ex rel. Taylor* v. *Forbes*, 143 N. Y. 219; *Matter of Grand Jury, Co. of*

*Kings [Reardon]*, 278 App. Div. 206; *Matter of Brady*, 69 N. Y. 215; *Matter of Graham*, 203 App. Div. 172; *People* v. *Butts*, 121 App. Div. 226; *United States* v. *Rosenwasser*, 145 F. 2d 1015.)

*Frank S. Hogan, District Attorney (Richard G. Denzer, Irving Slonim* and *Harold Roland Shapiro* of counsel), for respondent-appellant. I. The directions of the subpœnas requiring production of the union records were proper and did not violate any rights of petitioner. (*United States* v. *White*, 322 U. S. 694; *Matter of Bleakley* v. *Schlesinger*, 294 N. Y. 312; *Wilson* v. *United States*, 221 U. S. 361; *People ex rel. Massarsky* v. *Adams*, 268 App. Div. 974, 294 N. Y. 819; *Martin* v. *Curran*, 303 N. Y. 276; *People* v. *Kuhn*, 262 App. Div. 718; *People ex rel. Murphy* v. *Crane*, 80 App. Div. 202; *People* v. *Herbert*, 162 Misc. 817.) II. The directions of the Weinstein subpœna requiring production of records pertaining to petitioner's personal affairs were proper and did not violate any rights of petitioner. (*People ex rel. Mooney* v. *Sheriff of N. Y. Co.*, 269 N. Y. 291; *Sibley* v. *Waffle*, 16 N. Y. 180; *Matter of Putnam*, 257 N. Y. 140; *Gariepy* v. *United States*, 189 F. 2d 459; *Himmelfarb* v. *United States*, 175 F. 2d 924; *Matter of Fisher*, 51 F. 2d 424; *Matter of King* v. *Ashley*, 179 N. Y. 281; *Matter of Cunnion*, 201 N. Y. 123; *Kent Jewelry Corp.* v. *Kiefer*, 202 Misc. 778; *People* v. *Defore*, 242 N. Y. 13; *People* v. *Ales*, 247 N. Y. 351; *People* v. *Gardner*, 144 N. Y. 119.) III. The Appellate Division did not possess jurisdiction to entertain petitioner's appeal. (*People* v. *Gersewitz*, 294 N. Y. 163; *People* v. *Reed*, 276 N. Y. 5; *People* v. *Zerillo*, 200 N. Y. 443; *Matter of Grand Jury, Co. of Kings [Reardon]*, 278 App. Div. 206; *People ex rel. Livingston* v. *Wyatt*, 186 N. Y. 383; *Matter of Turecamo Contr. Co.*, 260 App. Div. 253; *Matter of Bancroft*, 276 App. Div. 485.)

FROESSEL, J. During and prior to March, 1953, a Grand Jury of New York County was investigating the activities of petitioner, Joseph P. Ryan. He is president and a member of the International Longshoremen's Association (hereinafter referred to as ILA) and the Atlantic Coast District, a subdivision of ILA, and is also a member of the Joseph P. Ryan Association. On March 9 and 10, 1953, four subpœnas duces tecum were served on four different persons directing each of them to produce

before the Grand Jury, " as a witness in a criminal action prosecuted by the People of the State of New York against John Doe ", various books, records and papers pertaining to petitioner personally, the ILA, the Atlantic Coast District, ILA Ad Journal Account, ILA New York District Council and Joseph P. Ryan Association, Inc.

Petitioner then made a " motion ", as he called it, instituted by an order to show cause in the Court of General Sessions, New York County, which we may assume was the court for which this Grand Jury was drawn (Code Crim. Pro., §§ 223, 225), to quash the subpœnas served upon himself, George Weinstein, his accountant, and Harry Hasselgren, as treasurer of ILA. He urged that to compel the production of the records sought by the subpœnas would be a violation of his constitutional protection against self incrimination; as to the records in the possession of his accountant, compulsory production would violate the confidential and privileged relationship existing between a person and his accountant; and that certain papers sought by the subpœna served upon his accountant and contained in a red manila envelope come within the attorney-client privilege provided for in section 353 of the Civil Practice Act.

The Court of General Sessions denied the motion except as to the papers in the red manila envelope, as to which it reserved decision, and that is not before us. The Appellate Division (one Justice dissenting) modified said order by granting petitioner's motion with respect to the subpœna served upon the accountant " to the extent that it calls for the production of any of Ryan's personal papers and records and accountant's work sheets based thereon ", and as so modified affirmed. Cross appeals were taken to this court from the order of modification' pursuant to section 588 of the *Civil Practice Act,* and therefore no leave to appeal was obtained pursuant to section 520 of the Code of Criminal Procedure. In our view, these appeals do not lie, inasmuch as the order of the Court of General Sessions was not appealable.

The motion to vacate these subpœnas, which had been issued by the District Attorney pursuant to section 609 of the Code of Criminal Procedure, and were returnable before a Grand Jury investigating, and which eventually indicted, petitioner for

alleged criminal acts, was as noted made in the Court of General Sessions. This is a court of limited but original criminal jurisdiction; its jurisdiction and procedure are governed by section 51 of the Code of Criminal Procedure (*People ex rel. Jerome* v. *Court of General Sessions,* 185 N. Y. 504; Code Crim. Pro., § 11, subd. 5). It is authorized to exercise " the same powers as are conferred by this code upon county courts in other counties " (Code Crim. Pro., § 51, subd. 2), and a county court is empowered to " inquire by the intervention of a grand jury of all crimes committed or triable in the county " (Code Crim. Pro., § 39, subd. 1). By section 962 of the Code of Criminal Procedure, it is provided that said code applies to criminal actions.

There being no statutory provision authorizing the court to vacate subpœnas, this motion of necessity must have been addressed to an inherent right in that criminal court to exercise such a power (see *People* v. *Gersewitz,* 294 N. Y. 163, 167, certiorari dismissed 326 U. S. 687). Thus every facet of this application was criminal in nature, and the order denying the motion to vacate the subpœnas was made in a criminal proceeding.

It is well settled that appeal is not a matter of constitutional right, and in criminal (noncapital) cases an appeal lies only by virtue of statutory authorization; such jurisdiction can never be assumed, unless a statute expressly authorizes its exercise (*People* v. *Gersewitz, supra*; *People* v. *Reed,* 276 N. Y. 5; *People* v. *Zerillo,* 200 N. Y. 443; *McKane* v. *Durston,* 153 U. S. 684, 687; Cohen and Karger, Powers of the New York Court of Appeals, p. 706). The Code of Criminal Procedure makes no provision for the review of an order denying a motion to vacate a subpœna (see Code Crim. Pro., §§ 517–519); hence neither the Appellate Division nor this court has jurisdiction, as was expressly held in *Matter of Turecamo Contr. Co.* (260 App. Div. 253, 255); (see, also, *People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 394; *Matter of Cheney* v. *Cheney,* 255 App. Div. 302).

Petitioner, as did the Appellate Division herein, predicates a right of appeal on subdivision 2 of section 631 of the Civil Practice Act. That no right of appeal is afforded petitioner by this section is manifest. In the first place, section 1 of the Civil Practice Act provides that it " shall apply to the civil practice

in all the courts of record of the state." The Court of General Sessions has no civil jurisdiction. Then section 7 of the Civil Practice Act provides that in "construing this act * * * 8. The word 'action' refers to civil action; * * * the term 'special proceeding', to a civil special proceeding". Hence, "special proceeding" as used in section 631 of the Civil Practice Act, can have no application to this criminal case. Moreover, the instant motion was not a "special proceeding instituted * * * pursuant to a special statutory provision", such as habeas corpus and contempt (Cohen and Karger, *id.*, pp. 708–709), and as, for example, in *Matter of Grand Jury, Co. of Kings* [*Reardon*], 278 App. Div. 206, 210–211 [contempt]). Rather, as heretofore noted, petitioner brought this motion to invoke the inherent power of a court of criminal jurisdiction to vacate subpœnas. Consequently, subdivision 2 of section 631 is clearly inapplicable (*Matter of Bancroft,* 276 App. Div. 485, 489–490).

The cases of *People* v. "*John Doe*" (*Byk*) (247 App. Div. 324, affd. 272 N. Y. 473) and *Matter of Di Brizzi* (*Proskauer*) (303 N. Y. 206) are not apposite. In both of those cases the motion to vacate was made at Special Term of the Supreme Court, a court of general jurisdiction empowered to deal with both civil and criminal matters, and, since they were civil proceedings, the right to appeal was dependent upon the practice applicable to civil cases. Moreover, in neither of these cases was the precise question before us, relating to appealability, raised by the parties. In the case we are reviewing, however, petitioner chose to proceed in a court of *criminal* jurisdiction. By so doing he instituted a criminal proceeding, and his right to appeal is therefore dependent upon the practice applicable to criminal cases.

We have recognized that, dependent upon the jurisdiction in which a proceeding is brought, two identical proceedings may be civil or criminal in nature and consequently subject to two different sets of rules respectively determining rights of appeal, viz., as to a filiation proceeding, see *Matter of Clausi* (296 N. Y. 354), *Feyler* v. *Mortimer* (299 N. Y. 309), *Commissioner of Public Welfare* v. *Simon* (270 N. Y. 188); as to a juvenile delinquency proceeding, see *People* v. *Lewis* (260 N. Y. 171, appeal

dismissed and certiorari denied 289 U. S. 709), *People* v. *Fitzgerald* (244 N. Y. 307) ; as to a proceeding to compel the support of a poor person, see *Matter of Kane* v. *Necci* (269 N. Y. 13) ; see, also, Cohen and Karger (*id.,* pp. 710–711).

While the District Attorney vigorously urges the non-appealability of the order of the Court of General Sessions, he requests that we nevertheless express our views on the merits of this case. Petitioner, on the other hand, while urging appealability, states that if we should decide to the contrary, it would not only be " entirely improper and unwise " to decide the merits, but also " wholly inconsistent with well-established principles of judicial review ", as to which, of course, he is right (Cohen and Karger, *id.,* pp. 9, 11).

The appeals should be dismissed, without costs, solely upon the ground that no appeal lies from the order of the Court of General Sessions, and the matter should be remitted to the Appellate Division with directions to dismiss the appeal taken to that court (*Matter of Grade Crossings of New York Central R. R. Co. [Buffalo]*, 297 N. Y. 246).

LEWIS, Ch. J., CONWAY, DESMOND, DYE and FULD, JJ., concur; VAN VOORHIS, J., taking no part.

Appeals dismissed, etc.