Heney Clay Geeenberg, J.
On June 2,1958, pursuant to proclamation issued by tlae Governor, tMs Extraordinary Special and Trial Term of tbe Supreme Court was appointed for the purpose of inquiry, trial and/or judgment concerning any and all *279 unlawful acts conunitted in Ulster County relating to or affecting in any manner public moneys or property, public records, tbe elective franchise, the collection or expenditure of public revenues, or the government of said county or any subdivision thereof.
The Special Assistant Attorney-General in charge has been conducting an investigation into charges of alleged payments of cash considerations, commonly referred to as “ kickbacks ’ ’, to certain officials in Ulster County. In the .course of this investigation he has caused a subpoena duces tecum to be served upon petitioner, an attorney, requiring him to produce before the Grand Jury of Ulster County certain books and records of Ulster Bituminous Distributors, Inc., described therein, such as its minute book, stock certificate book, ledgers, journals, checkbooks, payroll records, etc.
Petitioner, admitting that he has in his possession some of these books and records, then brought on this application to quash and vacate the subpoena on the ground that they “ came to him in a professional, confidential capacity and incidental to the attorney-client relationship ” which existed between him and one John G. M. Hilton, principal (and subsequently sole) stockholder of the corporation and thereafter also between him and the corporation. He states that Hilton sought and received legal advice from him on his own behalf and on behalf of his corporation. After Hilton’s death in 1955 he continued to act as attorney for the corporation until it was dissolved in 1956 and thereafter as its corporate escrow agent for the collection and distribution of its assets. Hilton’s widow, who was his sole legatee and thus the successor in interest to all his rights in the corporation, died on or about April 30, 1958. The probate of her will was scheduled for July 21 but on that date it was adjourned to August 25 on the ground that the subscribing witnesses were not available.
Petitioner urges that it would be improper for him to comply with the subpoena until he is authorized to surrender the records in his possession by the executor of her estate, when appointed. His position is summed up in the following words: “ That your deponent has no personal interest in any of the records which are sought to be subpeened except that, as an attorney, he feel it to be his duty not to voluntarily surrender records which came into his possession in a confidential capacity under an attorney-client relationship without being authorized so to do by some person in being who has authority to act in the premises.”
*280 Before we address ourselves to the specific situation here involved of an attorney in possession of his client’s records, we must take note of the general proposition that ‘ ‘ A witness in whose possession are papers which it is sought to produce by a subpoena duces tecum is not excusable for refusing or neglecting to obey it because the papers do not belong to him.” (2 Underhill, Criminal Evidence [5th ed.], pp. 1318-1319.)
The long-established attorney-client privilege written into our law is confined to the nondisclosure of ‘ ‘ a communication, made by his client to him, or his advice given thereon, in the course of his professional employment ” (Civ. Prac. Act, § 353). The question here is whether the privilege may be claimed to apply to the books and records of a corporation which are turned over to its attorney.
It will be noted that the subpoena duces tecum calls merely for the production by petitioner of the enumerated books and records. It does not require him to give any testimony as to their contents, nor as to any communications made by his client or his advice given thereon which may have preceded or accompanied whatever record of the transaction was made in the corporate books. It is the record alone regularly maintained by or on behalf of the corporation whose production is now sought and resisted.
Actually, petitioner does not even argue that any portion of the records reflects a communication to him by his client or his advice given thereon. His sole point is the general one above stated — that the books and records came to him under an attorney-client relationship and remained in his possession in connection with professional legal services rendered to the corporation and its sole stockholder. However, it is immaterial which ground is asserted as the basis for resistance to the production of these corporate books. The applicable rule laid down by our highest court is broad enough to cover any situation involving the custody of such books by anyone, including the attorney for the corporation.
It should be kept clearly in mind that an attorney, such as petitioner, who keeps his corporate client’s books and records in his office, acts in a dual capacity toward such a client. In the giving of advice or performance of legal services, he is its attorney; but as custodian of its records, he is its agent. And this separation of functions occurs the moment he has completed and has executed any record of a corporate transaction in its books. The recordation being a corporate function, that record becomes corporate property and his subsequent reten *281 tion of the books an act on behalf of the corporation merely as its agent.
The general problem of compulsory production of a client’s papers while in the possession of his attorney — excluding, of course, a document which is in the nature of a communication to the attorney seeking his advice or a document which has the status of a privileged communication — is clearly analyzed in Wigmore on Evidence (3d ed., Vol. 8, pp. 592-593):
‘ ‘ The attorney is but the agent of the client to hold the deed; if the client is compellable to give up possession, then the attorney is; if the client is not, then the attorney is not. It is merely a question of possession, and the attorney is in this respect like any other agent. There is, to be sure, the added consideration of policy, namely, that if the attorney, were not compellable when the client was, then the client’s obligation to produce could always be evaded in very simple fashion by placing the deed with the attorney; and such a quibble could not be tolerated by any practical system of law. But, apart from this, the doctrine of agency is ample to justify the result. * * *
‘ ‘ It follows, then, that when the client himself would be privileged from production of the document, either as a party at common law, or as a third person claiming title, or as exempt from self-crimination, the attorney having possession of the document is not bound to produce; and such has invariably been the ruling. On the other hand, if the client would be compellable to produce, either by motion or by subpoena or by bill of discovery, then the attorney is equally compellable, if the document is in his custody, to produce under the appropriate procedure. ’ ’
The courts of this State at an early date analyzed and solved the problem in similar fashion. In Jones v. Reilly (174 N. Y. 97, 105 [1903]), it was said: “ The privilege was that of the client, not of the counsel, and when by change in the law the client could be compelled by subpoena to produce documents in his possession, the rule that the attorney could not be forced to produce them when in his possession necessarily fell. The subject is elaborately discussed by the late Court of Common Pleas of the county of New York in Mitchell’s Case (12 Abb. Pr. 249), and in the conclusion there reached, that an attorney or counsel is obliged in answer to a subpoena to produce any instruments of his client which the latter could have been compelled to produce, we entirely concur. See, also, People ex rel. Mitchell v. Sheriff of New York, 29 Barb. 622. ”
*282 The issue in the application at bar is thus narrowed down to the question as to whether the corporation or anyone on its behalf would be privileged from production of these books and records on any ground recognized at law. If the answer is that the “ client would be compellable to produce ”, then the attorney is “equally compellable if the document is in his custody” (Wigmore, Evidence, supra).
The answer to this question has been given time and again by the Supreme Court of the United States.
In Hale v. Henkel (201 U. S. 43, 74-75), the court pointed out the fundamental distinction between an individual and a corporation with regard to a claim of privilege against self incrimination: “ The individual may stand upon his constitutional rights as a citizen. * * * Upon the other hand, the corporation is a creature of the State. It is presumed to be incorporated for the benefit of the public. * * * There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that a State, having chartered a corporation to make use of certain franchises, could not in the exercise of its sovereignty inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose.”
In Wilson v. United States (221 U. S. 361), the court held that the officer who prepared and had custody of the corporate books could not refuse to produce them on the ground that he personally might be incriminated by their production-.
In the course of a long and well-reasoned opinion the court said (221 U. S. 361, 380): “ The principle [of compulsory production] applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established. There the privilege, which exists as to private papers, cannot be maintained.” Accordingly, the corporation — and whoever may at the moment be the custodian of its books — has no privilege to resist production upon the ground of self incrimination when the authority of government demands such production. “Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law and to inflict punishment by forfeiture of franchises or otherwise, it must submit its books and papers to duly constituted authority when demand is suitably made.” (221 U. S. 361, 382.) “ The *283 appellant held the corporate books subject to the corporate duty. If the corporation were guilty of misconduct, he could not withhold its books to save it; and if he were implicated in the violations of law, he could not withhold the books to protect himself from the effect of the disclosures. * * # the visitatorial power which exists with respect to the corporation of necessity reaches the corporate books without regard to the conduct of the custodian ” (221U. S. 361, 384-385).
Citing these and other cases, the Supreme Court observed in Curcio v. United States (354 U. S. 118, 122 [1956]): “ The foregoing cases stand for the principle that the books and records of corporations cannot be insulated from reasonable demands of governmental authorities by a claim of personal privilege on the part of their custodian. ’ ’
Lest there be any misconception, it may also be observed at this point that this principle has not been limited to corporations but has been applied to unincorporated associations as well, i.e., any collective group represented by individuals (United States v. White, 322 U. S. 694). The rationale underlying the holding in Wilson v. United States (221 U. S. 361, supra) was deemed equally applicable to an unincorporated association, such as a union. The court said (322 U. S. 694, 700): “ The reason underlying the restriction of this constitutional privilege to natural individuals acting in their own private capacity is clear. The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. * * * The framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations.” (See, also, Matter of Ryan [Hogan], 281 App. Div. 953; 281 App. Div. 954, appeals dismissed 306 N. Y. 11.)
A case more directly in point is Grant v. United States (227 U. S. 74). It involved an attorney’s claim of privilege to withhold production of corporate books delivered to bitn by his client, the sole stockholder of the corporation, allegedly for purposes of consultation. The court disposed of all the contentions and arguments raised by the attorney, saying (227 U. S. 74, 79-80): “ These were independent documents. Even if they had been received by Grant ■ as attorney for purposes of consultation, *284 they could not be regarded as privileged communications. (Italics mine.) And, assuming that they were left with him merely for safe-keeping, they would still be held by Grant as Burlingame’s agent. The inquiry thus remains whether in these circumstances Grant could refuse their production if they would tend to incriminate his principal. * * * They remained subject to inspection and examination when required by competent authority, and they could not have been withheld by Burlingame himself upon the ground that they would tend to incriminate him.”
The rule that corporate books and records must be produced by the custodian thereof, has been recognized by the courts of this State (see Matter of Bleakley v. Schlesinger, 294 N. Y. 312, 316; Bradley v. O’Hare, 2 A D 2d 436, 441). It is immaterial whether they be in the possession of an officer of the corporation, its accountant or attorney; their production in the interests of justice does not depend upon the identity of the particular custodian.
The attempt here made by the petitioner to confer on himself a unique privilege insulated against the power of the Grand Jury to reach the books in his possession is no where recognized nor sanctioned by the prevailing authorities, State or Federal.
It follows, then, that petitioner, its attorney, may not refuse to produce such books and records retained by him as agent for the corporation.
The principle of separate functions and dual capacity on the part of an attorney-agent has been applied in a line of cases holding that the attorney-client privilege against disclosure does not extend to property received by or in the custody or control of the attorney, “ [who] merely becomes the agent of his client with respect thereto ” (Matter of Feinberg, 185 Misc. 862, 864 and cases cited therein). Similarly, it has been held that an attorney who, while employed in a professional capacity, also acted as negotiator on behalf of his clients in consummating a business transaction, is bound to disclose any communication made to him as negotiator or agent. (Rieser Co. v. Loew’s, 194 Misc. 119; Gallagher v. Akoff Realty Corp., 197 Misc. 460.)
Obviously, there can be no possible question as to petitioner’s responsibility to produce those records (and give testimony) covering the dissolution period when he acted as escrow agent for the corporation. But, in line with the principle firmly established by the Supreme Court of the United States, the courts of this State, and text authority, it must be held that during the entire period of his possession of the corporate *285 books and records be was the custodian agent of the corporation with no right to invoke any privilege to withhold their production which the corporation itself did not have. As to such books and records, there is no attorney-client privilege or, indeed, any other privilege, which may be claimed by anyone on behalf of the corporation or by the petitioner.
No other conclusion can justly be reached, and for an obvious reason. The law could be flouted with impunity if a party, by merely transferring essential documents into the custody of his attorney, could thereby prevent their production before a court or Grand Jury. The lawyer-client privilege is to be used as a shield, not as a sword.
Further delay in the production of the books and records of the corporation is not warranted simply because the attorney for the estate of Mrs. Hilton (not the petitioner herein) has elected to move with what appears to be an eye singular to delay. The public interest is paramount. It will tolerate neither delay nor specious device to frustrate the process of the law.
The application to quash and vacate the subpoena duces tecum dated June 4, 1958 is accordingly denied and petitioner is directed to comply forthwith with said subpoena in all respects.
Settle order.