Clare J. Hoyt, J.
Rosemary Woodruff was adjudged guilty of a criminal contempt of court in the Dutchess County Court on May 11, 1966 and sentenced to serve 30 days and pay a fine of $250. .She is incarcerated pursuant to said adjudication and applies herein for a certificate of reasonable doubt (Code Crim. Pro., § 527) and admission to bail (§ 555) pending the determination of her appeal from the County Court’s mandate.
The mandate is predicated on a finding that the contemner when called as a witness to testify before the Dutchess County Grand Jury investigating an alleged conspiracy to commit the crimes set forth in sections 1747, 1751, 1752, 1533, 483 and 101 of the Penal Law and the alleged commission of crimes set forth in .sections 1751 and 1752 of the Penal Law, willfully, unlawfully and contumaciously refused to answer legal and proper ques *431 tions before the Grand Jury after having been duly subpoenaed, sworn and after having been granted immunity pursuant to section 2447 of the Penal Law.
The punishment was imposed after a hearing before the County Court at which the foreman of the Grand Jury and the Grand Jury stenographer testified to the granting of the immunity, the questions asked and the refusal to answer said questions.
A refusal to testify is punishable by the court as for a criminal contempt in the manner provided in the Judiciary Law (Code Crim. Pro., § 619).
The District Attorney opposes the application first on the ground that the County Court’s mandate is not appealable, but rather reviewable only by a proceeding under article 78 of the CPLR. This position is not tenable. Contempts committed in the presence of the court and summarily punished to vindicate the authority and dignity of the court are reviewable only by an article 78 proceeding (People v. Epps, 21 A D 2d 650). However, when the contempt is not committed in the presence of the court and must be proved at a hearing, as in the case at bar, appeal is the proper remedy (Matter of Grand Jury of County of Kings [Reardon], 278 App. Div. 206). Consonant with this distinction, not all contempts arising from a refusal to testify before a Grand Jury are committed out of the presence of the court and subject to punishment only after a hearing. The determination of remedy depends on whether the witness is being punished for her conduct before the Grand Jury (see, e.g., People v. Brayer, 6 A D 2d 437, 438; Matter of Alberti v. Dickens, 22 A D 2d 770; Matter of Grand Jury of County of Kings, 3 Misc 2d 639) or her conduct before the court (see, e.g., People v. Hackley, 24 N. Y. 74, 79-80; People ex rel. Cirillo v. Warden, 11 N Y 2d 51, 53; cf. Matter of People v. Knapp, 4 Misc 2d 449, 457). In the instant matter the contempt was committed before the Grand Jury as established on the hearing. If during the course of the hearing, the conduct of the witness becomes contumacious, the court may deal with it summarily.
The District Attorney does not question the right of the contemner to seek a certificate of reasonable doubt, assuming the matter is reviewable by appeal.
Passing now to the merits of the application the contemner in her refusal to answer questions before the Grand Jury made this statement to the Grand Jury: “ No discourtesy is intended to the members of the Grand Jury or District Attorney, but I feel I must refuse to answer any questions on the ground that *432 immunity in the Grand Jury is not a question (sic) against Federal or other possible prosecution. My psychological and religious belief are not the proper subject of inquiry. There is a common privilege against being forced to testify as to my religious belief, and perhaps by asking me to testify against my friends you’re asking me to violate my constitutional rights in relation to the 1st, 5th and 9th amendment [sic} of the constitution, of the United States, and Section 3, 6 and 8 of the New York State Constitution. I believe that the scope of immunity is too vague, and you do not have a moral and constitutional right to ask me about my spiritual and personal life. And I respectfully state that which all Americans adhere to, and is not meant discourteously whatsoever.”
At the hearing before the court and in support of this application the contemner’s position is that the testimony sought to be elicited might tend to incriminate another, a coreligionist, and that by so testifying she would be acting contrary to sincerely held religious beliefs. She further claims this would be in violation of her right to religious freedom.
Although not asserted at the hearing or on this application, contemner’s objection before the Grand Jury as to the scope of the immunity conferred must first be considered.
It is claimed that certain of the crimes enumerated by the Assistant District Attorney as being within the scope of the investigation were not crimes “where, by express provision of the statute, a competent authority is authorized to confer immunity ” (Penal Law, § 2447, subd. 1) and thus the immunity conferred was not as extensive as the testimony sought. Further claim is made that the witness’ testimony may subject her to prosecution under Federal or other criminal laws and thus the immunity conferred was not broad enough. Both questions are resolved against the contemner.
It is true that no statute authorizes the conferral of immunity for the crimes of adultery (Penal Law, § 101), endangering the life or he'alth of a child (§ 483) or permitting the use of a building for a nuisance or opium smoking (§ 1533). However, the scope of the investigation related to an alleged conspiracy to commit these offenses and certain others (§§ 1751, 1752) for which immunity may be conferred (§ 1752-a). A conspiracy was identified and the statute authorizes the conferral of immunity in conspiracy investigations (§ 584). Under these circumstances “it [is] clear that the immunity thus granted covers crimes disclosed by the testimony but as to which there is no specific immunity statute ” (Matter of Grand Jury *433 [Cioffi], 8 N Y 2d 220, 225). Thus, once immunity is conferred the witness may not be prosecuted for any crime disclosed by her testimony whether an express provision of a statute authorizes granting immunity with respect to the crime disclosed or not.
The contemner received the maximum immunity that the State could grant (People v. Breslin, 306 N. Y. 294). This is clearly sufficient to require her to testify even though there is a possibility of prosecution in other jurisdictions (Matter of Herlands [Carchietta], 204 Misc. 373). The bare possibility, unsupported by any evidence, that there is a clear and present danger of prosecution in another jurisdiction does not render deficient the immunity granted (supra, pp. 376-377).
This brings us to the final consideration, the alleged violation of contemner’s religious freedom and the incrimination by her of others sharing her religious beliefs.
The record indicates and this court assumes that the contemner is .sincere in her religious beliefs. It is further asserted by her that the basic tenet of her religion is an absolute injunction against harming another adherent to her persuasion. Harm would certainly befall the coreligionists against whom she was asked to testify. This does not excuse her from so testifying. An individual is absolutely free to believe and worship in accordance with the dictates of his conscience. It matters not how obscure and unpopular his beliefs may be. But this freedom may not be invoked in justification of acts detrimental to the public good and safety (Reynolds v. United States, 98 U. S. 145, 164). The free exercise of religion embraces two distinct concepts: the freedom to worship and the freedom to act. The first is absolute, but the second cannot be. Conduct remains subject to regulation for the protection of society. This limitation is aptly expressed in Sherbert v. Verner (374 U. S. 398) wherein Mr. Justice Brennast at page 403 said: “ the Court has rejected challenges under the Free Exercise Clause [of the First Amendment] to governmental regulation of certain overt acts prompted by religious beliefs or principles, for ‘ even when the action is in accord with one’s religious convictions, [it] is not totally free from legislative restrictions. ’ Braunfeld v. Brown, 366 U. S. 599, 603. The conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order.”
So too in Board of Educ. v. Barnette (319 U. S. 624, 643-644) the court said: “ No well ordered society can leave to the individuals an absolute right to make final decisions, unassailable *434 by the State, as to everything they will or will not do. The First Amendment does not go so far. Religious faiths, honestly held, do not free individuals from responsibility to conduct themselves obediently to laws which are either imperatively necessary to protect society as a whole from grave and pres singly imminent dangers or which, without any general prohibition, merely regulate time, place or manner of religious activity.”
We must apply these principles to the inquiry before the Grand Jury which involved, inter alia, the possession and use of narcotics in violation of the Penal Law by the contemner’s coreligionists in the practice of their religious beliefs. Should the contemner be able to thwart or impede the power of the Grand Jury to investigate or act with respect to these alleged violations? That our laws must be enforced and violators thereof must be prosecuted are propositions so basic to the protection of members of our society as to require no citation of authority or further argument. Nor can, as the contemner suggests, a determination be made in each instance as to the seriousness of the crime that may be under investigation and the necessity of the testimony of any particular witness. Conceivably, objection might be raised if there were evidence to show that the Grand Jury investigation was in any way irregular and not conducted in good faith. No such claim can be made in the records herein.
The rule can be simply stated. No one may refuse to testify against another in a proper tribunal or before a Grand Jury or other investigating body simply on the grounds that it is violative of religious freedom. The Legislature in enacting the provisions of the Penal Law pertinent to the subject of inquiry before the Grand Jury did not see fit to provide any exemption by reason of religious persuasion or practice. These laws thus apply to all equally and are entitled to enforcement irrespective of any religious principles or beliefs that may be involved.
I can find no basis for an arguable defense in the application of the contemner for a certificate of reasonable doubt and it is thus denied.