Bellacosa, J.
(dissenting). I respectfully dissent and vote to dismiss. This matter is moot because the New Jersey Grand Jury, which sought evidence from the American Broadcasting System, ended its work earlier this year. While the Court has the discretion to speak in a moot case, it is required to follow settled rubrics to invoke that exception. In my view, the required protocols have not been satisfied in this matter, which is layered with additional discretionary and dictum-like impediments that also ought to prudentially forestall the *532 Court’s threshold leap. Inasmuch as the Court nevertheless steps out to the merits, I am forced to vote there, too, and would affirm the inanimate order of the Appellate Division.
The Court is unanimous, by concession of the parties, that our adjudication has no legal impact on the parties before the Court. The term of the Grand Jury in New Jersey expired without renewal more than two years after it sought from a New York television broadcaster "[a]ny and all notes * * * and all video and audio tapes of interviews” used in connection with the broadcaster’s news program on point-shaving in college basketball games. The end of the Grand Jury in New Jersey is of no consequence to this Court in ending this "case” in New York, even though the judgment is a legal cipher. Because this matter did not survive as a case or controversy, the Court’s propoundment is reduced to an advisory evidentiary exegesis. The pertinacity to expound this academic perspective is evident in the Court’s rejection of well-settled jurisprudential policies and principles that have long guided courts away from the shoals of essentially idle exercises, especially those that are uncontested in the sense that the parties have no real stake in the outcome.
The particular lapse that compels my separate expression in this case is the core element of this Court’s mootness override rubric — "a phenomenon typically evading review” (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 715 [emphasis added]; see also, Matter of Anonymous [Billie Boggs] v New York City Health & Hosps. Corp., 70 NY2d 972, 974; contrast, Matter of Grattan v People, 65 NY2d 243, 245, n 1). Rather than that prerequisite being satisfied, it is rationalized away to serve the Court’s insistence on wresting a merits discussion out of the subject matter.
The essential words of that key ingredient illuminate the contradiction of the rationalization. The New Jersey Grand Jury was in existence for over two years, during which time, by the casual pace of the interested parties, this lawsuit likewise lackadaisically wound its way through the three tiers of New York courts. This is, on its face and the record, not the type of inherently urgent or exceedingly rapid "phenomenon” contemplated by the Court’s settled rules, that allow only the most exceptional override of the interdiction against rendering advisory opinions. That some Grand Juries may generally be of short duration (majority opn, at 527-528) does not transform the mootness override admonition into a general access route *533 for judicial advice on all Grand Jury matters, despite mootness. Indeed, there is no showing in the course of this meandering litigation of preference requests in any courts or lack of opportunity to seek and receive accelerated consideration during the long term of this New Jersey Grand Jury — an investigatory-type, by the way, which does not "typically evade review” and is rather of the kind that is typically of very extended duration.
The Court discounts the high jurisprudential obstacle because of a perceived exigency to comment on aspects of this field of law. It would do well and better to wait to adjudicate a narrow, live legal dispute. By succumbing to the temptation instead to advise, the Court weakens an important procedural muscle and self-imposed discipline; to exercise the appropriate restraint in future moot scenarios will undoubtedly prove more difficult (see, Cardozo, The Nature of the Judicial Process, reprinted in Selected Writings of Benjamin Nathan Cardozo, at 164 [Margaret E. Hall ed 1947] [A Judge "is not a knight-errant, roaming at will in pursuit of his (or her) own ideal of beauty or of goodness.”]).
Going even farther in order to reach its merits goal, the Court finds it necessary also to overrule a long-standing, statutory, precedential, jurisdictional delineation (Matter of State of Washington v Harvey, 8 NY2d 865; and Matter of Ryan [Hogan], 306 NY 11 [declared "no longer good law”, majority opn, at 527, n 1]). Next, it wipes from the books, with unpersuasive distinctions, relevant guidance expressed in an opinion of this Court in a real case decided in the crucible of a real controversy with real litigants fighting over real consequences with respect to the same statute (People v McCartney, 38 NY2d 618, 622). That "case” speaks of the important New York policy considerations at work there, which are equally if not more importantly at risk in this "matter”. Seemingly contradictorily, the Court sweeps aside the New York policy concerns by suggesting that New Jersey and other States are "better qualified” (majority opn, at 530) to weigh their concerns against those of New York citizens on freedom of the press privileges. All these features taken together should reinforce forbearance in this case. Unfortunately, they do not and are given little or no weight.
After leaping over all the hurdles, the Court arrives at its determined destination — an expansive statutory construction and a restatement of evidentiary principles, exerted in a *534 vacuum, of an interstate compact. The traditional, incremental, common-law development process is surely compromised by this exercise, which will affect applications of the new "rules” in a myriad of unknown factual controversies in the future. At bottom, this academic exercise represents an unfortunate drop down, well below dictum.
Since the merits are reached, I must go the distance, too, and am compelled to express my academic view, which I would rather leave to commentators or save, as a Judge, for a real dispute. The inanimate order of the Appellate Division should be affirmed essentially for the reasons expressed in Justice Ellerin’s thoroughly analyzed opinion. This Court’s hortatory pronouncement regarding this interstate evidence-gathering tool creates the potential for considerable inappropriate manipulation of judicial process. After all, evidentiary expeditions are not unknown when the quarries are rich media resource materials.
The particular facts give some life to this dead case and offer some relevant insights on why lack of prudential forbearance should be a real concern. The appellant is a Deputy Attorney General of the State of New Jersey, appearing in New York courts through the offices of the New York County District Attorney against the Capital Cities-American Broadcasting Corporation. In April 1991, the Deputy Attorney General secured a certificate from a New Jersey Superior Court Judge to present to a court in New York, under the interstate compact, to compel the production in New Jersey of witnesses in the employ of the American Broadcasting Corporation with '[a]ny and all notes * * * and all video and audio tapes of interviews [by respondent’s reporter] concerning point shaving” in 1987-1988 college basketball games (emphasis added).
The majority seems to accord significant weight to the fact that the respondent New York media evidentiary source need travel only "across the river” to the neighboring State of New Jersey and, thus, would suffer minimal inconvenience in transporting its employees and its privileged evidence there. The propoundment of the Court’s would-be rule does not, however, stop at the bank across the river, despite the majority’s disarming disclaimer (majority opn, at 531). The disclaimer is patently unpersuasive because the principle emanating from this decision cuts across the continent, border-to-border, with multiple-forums consequences in the real litigated world of such matters. Otherwise, to state the obvious again, why not wait for a contested, live controversy and why speak to *535 the moot point now and here? My experience and judgment suggest that this far-reaching "precedent” will serve to haul any New York citizen into many other jurisdictions under an unnecessarily interpreted statute. New York State’s citizens may have to cart themselves, their employees and their records wherever a New York court’s potent writ commands them to go, whenever automatically invoked by any requesting State.
That dubious fallout is accomplished despite the fact that the requested information is facially protected as privileged press materials and is generally immune from governmental interference, chilling activities and inquisitive scrutiny in the requesting State with respect to the particular matter. Most other States for that matter, including New York with its strong public policy in this area, provide similar sanctuaries on statutory and constitutional grounds (O’Neill v Oakgrove Constr., 71 NY2d 521, 533 [concurring opn, Bellacosa, J.] ["Journalists should be spending their time in newsrooms, not in courtrooms as participants in the litigation process”]; compare the New York public policy at issue in People v McCartney, 38 NY2d 618, supra).
Finally, uneven applications and conflicting interpretations of this "precedent” with unbalanced impact on New York citizens, a media capital of the country and world, are the predictable consequences of this unnecessary excursion. One can only imagine what will occur when, in the future, real controversies with real litigation combatants file into New York courts under the interstate compact as evidentiary anglers from other States troll in New York’s reservoir of media records and resources.
Preferably, the matter should be dismissed for mootness, but since the Court insists on advising on the merits, I would affirm.
Chief Judge Kaye and Judges Simons, Hancock, Jr., Smith and Levine concur with Judge Titone; Judge Bellacosa dissents and votes to dismiss in a separate opinion.
Order reversed, without costs, and matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein, and certified question not answered upon the ground that the Appellate Division order is final and the certification of a question was thus unnecessary.