**UNITED STATES v. LAWN and six other cases.**

United States District Court, S. D. New York.

March 27, 1953.

Myles J. Lane, U. S. Atty., Gerome J. Leone, Asst. U. S. Atty., New York City, for the Government.

Garey & Garey, Jacob J. Rosenblum, Wm. Francis Corson and Edward T. Perry, New York City, for Louis J. Roth.

Lloyd Paul Stryker, and Harold W. Wolfram, New York City, for William Giglio, Frank Livorsi, Howard Lawn, and American Brands Corp.

GODDARD, District Judge.

Motions by defendants (1)—To dismiss the indictments and information on constitutional grounds, (2)—To dismiss certain of the indictments for failure to state facts constituting an offense against the United States, (3)—For bills of particulars, and (4)—For orders requiring the production of certain documents for inspection. The Government opposes these motions and moves to consolidate the several indictments.

Defendants Giglio, Livorsi, Lawn and Roth allege the violation of their rights under the Fifth Amendment of the Constitution by requiring them to testify and produce records before the grand jury which filed the indictments.

In September, 1950, criminal informations were filed charging the individual defendants and American Brands Corporation with violation of Title 26 U.S.C.A. § 145(a) by wilfully causing American Brands to fail to pay its income tax for 1946, and also charging Giglio separately under the same section with failure to pay his own tax for 1946. At the time the informations were filed, investigation of the defendants was not complete and the informations were marked off the calendar on April 9, 1951.

Early in July, 1952, while the informations were still pending, Giglio, Livorsi, Lawn, and Roth were served with subpoenas duces tecum, addressed to them as individuals and not in any representative capacity, to appear before the grand jury "to testify and give evidence in regard to an alleged violation of Title 18, Section 371" and to produce all books and records of American Brands Corporation, seven other corporations, three partnerships, and one individual proprietorship. Giglio and Livorsi were partners in certain of the partnerships, and Giglio had been an officer of several of the corporations, which had been liquidated in 1949, including American Brands.

On July 14th and 15th, 1952, Roth, Livorsi, and Lawn appeared in response to the subpoenas and were sworn. Neither Roth, an accountant, nor Livorsi produced any records. Lawn produced four partnership papers in obedience to the subpoena. They were not warned of their privilege. Having announced that they had none of the records, other than those Lawn produced, they were questioned about the location of the records and, further, concerning their activities and connections with the various companies. None of them claimed the constitutional privilege against self-incrimination.

In response to the subpoena, Giglio appeared before the grand jury on July 15th, 16th, 23rd, and September 2nd, 3rd, 4th and 5th, 1952. He was sworn and not warned of his constitutional privilege. He was questioned about the location and production of all the records of the corporations and partnerships named in the subpoena. Early in his examination on the first day, he said he would be happy to produce them if he was given a little time to get them together, but later, during that hearing, he repeatedly objected and said he would like to claim whatever constitutional rights he had against self-incrimination and that some of the papers requested were personal records. The interrogation was continued and he was taken before a judge of this court and directed specifically to answer certain questions relating to the corporations. The next day, July 16th, on the return to the grand jury room, the attorney for the Government said to Giglio—"Yesterday morning, when you left here, the Grand Jury asked you to produce the books and records requested in the subpoena which was served upon you, *and you were directed to bring all matters, all books and records,* which were in this area, excluding the books and records which were in Chicago, is that correct?" [emphasis added] Answer—"That's correct." Question—"Have you now complied with that direction?" In reply Giglio said he had brought 30 large cartons containing records and would bring the rest later. In the interval between July 16th and the early part of September he had produced about 80 cartons of records, partnership as well as corporate records.

Shortly after, these indictments were filed charging various violations of the income tax laws, personally and in connection with the partnership and corporate returns. [A sealed indictment against Roth was filed on September 15th and opened on October 20th. The other indictments were filed on October 20th.]

The Government, in opposition to the motion to dismiss, asserts that it had the right to subpoena corporate records held in a representative capacity.

■ A custodian of corporate records held in a representative capacity may be required to produce them for no privilege attaches to such records. Wilson

v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542. It is also true that he may be required to identify the records. United States v. Austin-Bagley Corp., 2 Cir., 1929, 31 F.2d 229; Carolene Products Co. v. United States, 4 Cir., 1944, 140 F.2d 61; United States v. Field, 2 Cir., 1951, 193 F.2d 92. However, as the court declared in United States v. Daisart Sportswear, Inc., 2 Cir., 1948, 169 F.2d 856, 861, reversed on other grounds, Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264:

> "Yet we do not believe that the principle of the Austin-Bagley case, supra, may be projected so that a corporate officer may be compelled to testify as to any and all phases of the corporation's activities, * * *."

■■■ The doctrine of the absence of privilege of corporate officers is thus closely circumscribed, see Healey v. United States, 9 Cir., 1950, 186 F.2d 164, and the Government, beyond requiring the production and identification of the corporate records, does not have an unbridled right to interrogate the corporate officer, without his constitutional privilege being available to him. Furthermore, the privilege against self-incrimination is available as to partnership records, for they are personal records. In re Subpoena Duces Tecum, D. C., 81 F.Supp. 418; United States v. Brasley, D.C., 268 F. 59.

■ A mere witness may properly be subpoenaed to appear and testify before the grand jury, though he may not be compelled to incriminate himself, Blair v. United States 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979, and he need not be warned of his privilege but to avail himself of it he must plead it whenever the answer to a question may incriminate. United States v. Benjamin, 2 Cir., 1941, 120 F.2d 521; United States v. Miller, D.C., 80 F.Supp. 979.

■■ However, upon the trial of the defendant in a criminal case, it would be a clear violation of a defendant's right against self-incrimination under the Fifth Amendment of the Constitution to compel him to take the stand, testify and produce his records, relating to the matter with which he is charged. Unless he volunteers, it would invalidate the trial. United States v. Housing Foundation of America, Inc., 3 Cir., 1949, 176 F.2d 665. Title 18 U.S.C.A. § 3481 makes a defendant a competent witness *at his own request*. It is thus improper to call him as a witness without a request on his part. 8 Wigmore on Evidence, 3rd Edit., p. 393; 3 Wharton's Criminal Evidence, 11th Edit., p. 1960.

■ For similar reasons, an indictment is invalid if a defendant against whom a criminal information has been filed, is called by the prosecution as a witness before the grand jury to obtain evidence tending to sustain an indictment against him, which supersedes the earlier information. Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566; United States v. Miller, supra; United States v. Kimball, C.C., 117 F. 156. In neither situation is the defendant required to claim the privilege. The law grants him this protection. It is a right which he alone may waive.

■ The defendants did not waive their rights. Only if they were warned of and understood their rights, consented to waive them, and were willing to testify, could they be called as witnesses. In United States v. Miller, supra [80 F. Supp. 981], the court declared:

> "Thus a defendant cannot by legal means be compelled to testify before a grand jury. This is so even though he fails to claim his constitutional privilege against self-incrimination, unless he waives it *after being properly warned of his privilege*." [Emphasis added.]

In the case at bar the defendants under criminal informations for tax viola-

tions previously filed, were subpoenaed in a grand jury investigation directly related thereto. They were questioned concerning matters which could incriminate them and partnership records were procured from them, without their being warned of their privilege, and thereafter the grand jury filed these indictments for tax violations, some of which indictments superseded the original informations, thereby substituting a felony charge for what was originally charged in the informations as a misdemeanor. The evidence obtained on the examinations of the defendants at least furnished a link in the chain of evidence needed to convict them for the crimes charged. In Giglio's case, it was procured after he had pleaded his privilege. The constitutional rights of the defendants were thus clearly violated.

■ The court has inherent power, in its discretion, to dismiss indictments obtained in violation of the rights of the defendants. It is also evident that such evidence as is obtained in violation of those rights may be ordered suppressed and returned. In re Fried, 2 Cir., 1947, 161 F.2d 453, 1 A.L.R.2d 996.

The defendants also ask that the informations filed against them in 1950 be dismissed. There is no allegation of impropriety in those proceedings. The motions to dismiss the informations are accordingly denied.

The motions to dismiss the indictments numbered 139–206, 139–304, 139–305, 139–306, 139–307, 139–308 filed against Giglio, Livorsi, Lawn, and Roth, are granted and the Government is directed to return, to the respective defendants, the partnership and personal records produced by them in response to the subpoenas.

As the indictments are dismissed, it is unnecessary to consider the other motions which are directed to the indictments.