### UNITED STATES of America, Plaintiff,

v.

### Aristoteles Socrates ONASSIS, Constantine Konialidis, Nicholas Konialidis, Merope Onassis Konialidis, Sociedad Industrial Maritima Financiera Ariona Panama, S.A., Sociedad Maritima Miraflores Limitada, Petroleum Carriers of Panama, Inc., Transatlantica Financiera Industrial, S.A., United States Petroleum Carriers, Incorporated, and Victory Carriers, Inc., Defendants.

United States District Court
S. D. New York.
June 30, 1955.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of N. Y. (Morton Liftin, Patrick F. Cooney, Attorneys Department of Justice, Washington, D. C., of counsel), for plaintiff.

Cahill, Gordon, Reindel & Ohl and Bigham, Engler, Jones & Houston, New York City (Paul W. Williams, New York City, of counsel), for moving persons.

WALSH, District Judge.

This motion presents the question of whether the government may subpoena

partnership records through one partner which will incriminate another partner or whether such a subpoena is forbidden by the Fourth or Fifth Amendments.

This is a civil action to recover certain ships from the defendants and for other relief on the ground that these ships were obtained from the government by fraud, by the misrepresentation that the corporations purchasing the vessels were controlled by citizens when in fact they were controlled by aliens.

The government has subpoenaed certain records from the partnership, Simpson, Spence & Young. The subpoena is directed to the senior partner of the firm, Charles A. Waters. Neither the partnership nor any of its members are parties to this action. As brokers, however, the firm has had extensive dealings with certain of the defendants. Some of these dealings related to the sale of the ships involved in the action. The government contends that the documents are necessary to show that these defendants are doing business in this state and are therefore within the jurisdiction of this court, and also to prove its cause of action.

■ The subpoena, although extensive, calling for the principal records relating to the partnership's dealings with these parties over a six year period from 1948 through 1954, is not unreasonable because of its scope. It calls for records obviously relevant and material to the extensiveness of the business done by these defendants within this jurisdiction. Consequently, it cannot be quashed on the grounds that compliance would be unreasonably onerous. Wilson v. United States, 1911, 221 U.S. 361, 376, 31 S.Ct. 538, 55 L.Ed. 771; Brown v. United States, 1928, 276 U.S. 134, 142, 48 S.Ct. 288, 72 L.Ed. 500; Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 209–210, 66 S.Ct. 494, 90 L.Ed. 614; Cf. Hale v. Henkel, 1906, 201 U.S. 43, 76–77, 26 S.Ct. 370, 50 L.Ed. 652.

■ The question is whether the subpoena is invalid because the documents subpoenaed will incriminate a member of the partnership not himself subpoenaed, Charles Augenthaler. This single question presents the only possible basis for relief in this case under either the Fourth or the Fifth Amendment.[1] Augenthaler was indicted in a criminal proceeding now pending in the District of Columbia which grew out of the same transactions which are the

---

[1] The question of self-incrimination is the same whether raised under the Fifth Amendment or as a ground for holding unreasonable a search and seizure under the Fourth.

It has been held that a subpoena is a constructive or figurative search and seizure, Boyd v. United States, 1886, 116 U.S. 616, 621–622, 630, 6 S.Ct. 524, 29 L.Ed. 746; Hale v. Henkel, 1906, 201 U.S. 43, 76–77, 26 S.Ct. 370, 50 L.Ed. 652; Oklahoma Press Pub. Co. v. Walling, 1946, 327 U.S. 186, 202, 208, 66 S.Ct. 494, 90 L.Ed. 614; and that a subpoena which compels self-incrimination, in violation of the Fifth Amendment, is an *unreasonable* search and seizure, Boyd v. United States, supra, 116 U.S. at pages 622–630, 6 S.Ct. 524, and that consequently such a subpoena violates the Fourth Amendment.

Similarly, it has been held that an unreasonable search and seizure, in violation of the Fourth Amendment, compels the victim to produce evidence and, if the evidence is self-incriminatory, the use of this evidence violates the victim's rights under the Fifth Amendment. Gouled v. United States, 1921, 255 U.S. 298, 306, 311, 41 S.Ct. 261, 65 L.Ed. 647; Agnello v. United States, 1925, 269 U.S. 20, 33–34, 46 S.Ct. 4, 70 L.Ed. 145; Amos v. United States, 1921, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654.

The practical significance of the violation of two amendments rather than one seems primarily procedural. It has been held that the return of improperly seized documents under the Fourth Amendment should be sought prior to trial to avoid collateral issues during the trial. United States v. Salli, 2 Cir., 1940, 115 F.2d 292, 293; Brink v. United States, 6 Cir., 1932, 60 F.2d 231, 234; Dunn v. United States, 10 Cir., 1938, 98 F.2d 119, 120, 117 A.L.R. 1302; Peters v. United States, 9 Cir., 1938, 97 F.2d 500, 502; Bennett v. United States, 1939, 70 App.D.C. 76, 104 F.2d 209, 210; see also Segurola v. United States, 1927,

subject of the present civil proceeding. Waters, the partner subpoenaed, has already received immunity because of his testimony before the District of Columbia Grand Jury. None of the other members of the partnership is in danger of incrimination, and, of course, the partnership itself is not subject to prosecution.

The records subpoenaed are likely to be incriminating to Augenthaler. Some of them may be expected to contribute proof of transactions which, directly or indirectly, are the basis of the indictment against him. They may also contain records, memoranda and correspondence actually written or approved by him.

■ The Supreme Court has held that the person subpoenaed may not decline to testify or to produce a record in his possession because of possible incrimination of a third person. Rogers v. United States, 1951, 340 U.S. 367, 371,

71 S.Ct. 438, 95 L.Ed. 344; United States v. White, 1944, 322 U.S. 694, 704, 64 S.Ct. 1248, 88 L.Ed. 1542; Hale v. Henkel, supra, 1906, 201 U.S. 43, 69–70, 26 S.Ct. 370, 50 L.Ed. 652; United States v. Field, 2 Cir., 1951, 193 F.2d 92, 97. Neither may the owner raise his privilege against self-incrimination, under either amendment, to prevent the production of his private records in the possession of third persons. Johnson v. United States, 1913, 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919; Perlman v. United States, 1918, 247 U.S. 7, 15, 38 S.Ct. 417, 62 L.Ed. 950. See also Burdeau v. McDowell, 1921, 256 U.S. 465, 476, 41 S.Ct. 574, 65 L.Ed. 1048.

Does it make any difference that the person subpoenaed is a partner of the person incriminated? Or that the record instead of being in the exclusive possession of the person subpoenaed is taken from the main office of the partnership? Or that the person incrimi-

275 U.S. 106, 111–112, 48 S.Ct. 77, 72 L.Ed. 186. It has also been held that a claim of privilege under the Fifth Amendment can only be made during the trial, both as to the production of records and oral testimony. See, as to documents, Wilman v. Miller, Sup.Ct. N.Y.Co., 1942, 178 Misc. 549, 35 N.Y.S. 2d 352, 354; United States v. Collins, D.C.S.D.Or.1906, 146 F. 553, 556; as to oral testimony, O'Connell v. United States, 2 Cir., 1930, 40 F.2d 201, 205; Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566, 579; Marcello v. United States, 5 Cir., 1952, 196 F.2d 437, 441.

Consequently when improperly seized records are offered at the trial and the defendant has failed to move to suppress them before the trial, we find the court, even though it forgave the failure to move to suppress in advance of trial, also holding that the use of these documents constituted a violation of the Fifth Amendment as well as the Fourth Amendment, and was thus a matter customarily raised at trial. Gouled v. United States, supra, 255 U.S. at page 305, 41 S.Ct. 261; Agnello v. United States, supra, 269 U.S. at page 34, 46 S.Ct. 4; Amos v. United States, supra, 255 U.S. at page 316, 41 S.Ct. 266. Similarly, where a statute by attempting to transmute the failure to produce documents into an admission of their

contents and thus make ineffective any claim of privilege, the court held that its effect was to violate the Fourth Amendment as an unreasonable search and seizure. Boyd v. United States, supra; Cf. Haywood v. United States, 7 Cir., 268 F. 795, 802–804, certiorari denied, 1921, 256 U.S. 689, 41 S.Ct. 449, 65 L. Ed. 1172.

Self-incrimination is the same whether raised under the Fourth or the Fifth Amendment. If it is not self-incrimination under the Fifth, it is not self-incrimination under the Fourth. No case has extended relief under the Fourth Amendment based upon self-incrimination unless the relief would be available under the Fifth alone if properly raised. In every case where self-incrimination has been stated as the ground for violation of the Fourth Amendment, it is a case where the person moving to suppress the evidence was himself the person subjected to compulsion. Gouled v. United States, supra; Agnello v. United States, supra; Amos v. United States, supra; see also Boyd v. United States, supra. It thus appears that the protection against self-incrimination afforded the individual under each of these amendments is a protection against compulsion exerted against himself which forces the disclosure of self-incriminating evidence.

nated had a property interest in the record as joint tenant in partnership?

■ The first question is quickly disposed of because there is no contention that the fiduciary relationship between partners makes communication between them privileged. By statute, partners owe a fiduciary obligation to each other but no provision protects them from court disclosure of the communications with each other. Although privileged communications based on a few confidential relationships are recognized, there has been no disposition to increase the number of confidential categories. McMann v. S. E. C., 2 Cir., 1937, 87 F.2d 377, certiorari denied McMann v. Engle, 1937, 301 U.S. 684, 57 S. Ct. 785, 81 L.Ed. 1342, see also Rosenberg v. Carroll, D.C.S.D.N.Y.1951, 99 F.Supp. 629. In New York the courts have declined to recognize such testimonial privilege except as required by statute. People ex rel. Mooney v. Sheriff ·of New York County, 1936, 269 N.Y. 291, 199 N.E. 415, 102 A.L.R. 769; People v. Keating, App.Div., 1st Dept., 141 N.Y.S.2d 562. As to partnerships there is no such dominant public interest in assuring complete frankness between partners that it subordinates the public interest in having lawsuits decided on the true facts. See McMann v. S. E. C., 2 Cir., 1937, 87 F.2d 377, 378, 109 A.L.R. 1445. So if Waters were asked to testify as to Augenthaler's oral reports in firm meetings, he could be required to do so.

The records subpoenaed are nothing more than writings embodying reports of the same nature whether by book entry, memorandum or copies of correspondence. They are communications to· the partnership and to each member of the partnership. No more than testimony as to oral admissions are they subject to privilege based upon a confidential or fiduciary relationship.

The relationship of mutual agency said to exist between partners is no bar to their production.[2] In Hale v. Henkel, supra., 201 U.S. at pages 69–70, 26 S.Ct. at page 377, the court held that the person subpoenaed must produce "* * even though he were the agent of such person [incriminated]. * * *"[3]

■ The next question is whether the court can obtain them lawfully, without exerting compulsion on Augenthaler. Under the partnership agreement and the New York Partnership Law, which the agreement makes controlling, it can.[4] Augenthaler, as a partner, has no power

---

2. Under the New York Partnership Law it has been argued that the relationship is not one of mutual agency but one of co-agents of the partnership. See § 20(1); see Note, 41 Col.L.R. 698 (1941).

3. Contrary views expressed in an abortive reference to the question in Application of Ryan, 1st Dept., 1953, 281 App.Div. 953, 120 N.Y.S.2d 110, reversed, 1953, 306 N.Y. 11, 114 N.E.2d 183, ignore this holding of the Supreme Court and are consequently disregarded. There the question was presented as to admittedly private documents held for an individual client by an accountant. The Court of General Sessions ordered the accountant to produce; the Appellate Division reversed holding that the subpoena violated the Fifth Amendment, Justice Breitel dissenting; the Court of Appeals reversed the Appellate Division, holding that the order of General Sessions was

not appealable, thus leaving the ruling of General Sessions as the law of the case. Compare Remmer v. United States, 9 Cir., 1953, 205 F.2d 277, 284, reversed on other grounds, 1954, 347 U.S. 227, 74 S.Ct. 450, where the Court of Appeals for the Ninth Circuit affirmed a conviction notwithstanding that the court had compelled defendant's attorney, pursuant to his agreement with the government's attorney, to return incriminating records belonging to the defendant which the government had obtained originally from third persons.

4. See New York Partnership Law, McK. Consol.Laws, c. 39. In New York there is substantial basis for respecting the partnership entity as to its accounts. The courts have stated in dicta that, in keeping partnership accounts, the partnership is treated as an entity, an exception to the ordinary rule. Jones v. Blun, 1895, 145 N.Y. 333, 341, 39

to use or suppress these records as his personal property. He has a property interest in them as a tenant in partnership.[5] He has the right of access to them.[6] That is all. He has no right to exclusive possession.[7] Section 41 of the New York Partnership Law provides:

> "The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them."

He does not even have a sufficient private interest in them as specific property that he can assign to another the right to look at them.[8] They are not his private records.[9]

 Waters does have sufficient power over them to respond to the subpoenas without participation by Augenthaler. Like other partnership property, the records are available to any partner for use in furtherance of partnership business.[10] The subpoena relates only to partnership transactions. The production of evidence in this case regarding partnership transactions is partnership business, not that of Waters or any other partner as an individual. It is the business of the partnership to respond to the lawful demands of government regarding partnership affairs. It makes no difference that the partnership has no interest in the outcome of the lawsuit. If Augenthaler has voluntarily included certain admissions within the records of the partnership, by so doing he placed these admissions beyond his power to suppress and within the control of each of his seven partners to treat as partnership property as well as to inspect and copy.[11] Without exercising any compulsion upon Augenthaler the court can compel one of his partners to disclose the admissions Augenthaler has made orally and to produce any relevant writing Augenthaler has put within his control.

 The fact that the records will be produced from the partnership office is of no significance. Cases such as Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319, and In re Dooley, 2 Cir., 1931, 48 F.2d 121, must be distinguished. The place from which records are taken or the ownership of records are significant only when they are taken by physical intrusion and seizure. They were not cases like this, where documents have been sought by legal process served upon a person having legal access to both the premises and the records. Under

---

N.E. 954; Matter of Peck, 1912, 206 N.Y. 55, 66, 99 N.E. 258, 41 L.R.A.,N.S., 1223; Caplan v. Caplan, 1935, 268 N.Y. 445, 447, 198 N.E. 23, 101 A.L.R. 1223. An example of this handling of accounts is found in M & C Creditors Corp. v. Pratt, 172 Misc. 695, 17 N.Y.S.2d 240, 244, affirmed 255 App.Div. 838, 7 N.Y.S. 2d 662, affirmed 281 N.Y. 804, 24 N.E.2d 482. See Note, 41 Col.L.R. 698, 704 (1941); Crane, Partnership, 2d Ed., 1952, § 3, pp. 18–19.

5. N.Y. Partnership L. § 51(1).

6. N.Y. Partnership L. § 41.

7. N.Y. Partnership L. § 51(2) (a).

8. N.Y. Partnership L. § 51(2) (b).

9. The language of the court in United States v. White, 322 U.S. 694, 702, 64 S.Ct. 1248, 1253, 88 L.Ed. 1542, compelling a union officer to produce union books, is helpful by analogy. It said:

> "* * * The union owns separate real and personal property, even though the title may nominally be in the names of its members or trustees. The official union books and records are distinct from the personal books and records of the individuals, in the same manner as the union treasury exists apart from the private and personal funds of the members. * * *"

10. N.Y. Partnership L. § 51(2) (a) reads:

> "(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners."

11. N.Y. Partnership L. § 41, supra.

the Fifth Amendment, or the Fourth Amendment so far as it is raised to protect 'Fifth Amendment rights, the place from which the records are taken is not significant. A subpoena constitutes an unlawful seizure only when its compulsion is being exerted upon the person whom the records incriminate.[12]

Neither is Augenthaler's property interest in the records an obstacle to their production. Hale v. Henkel, supra, 201 U.S. 43, 69–70, 26 S.Ct. 370, is dispositive of the question. Although it is cited most often for its holding that a corporation has no privilege under the Fifth Amendment, its primary holding was that an agent having control of documents may be compelled to produce them even though they incriminate the owner. This holding was not limited to corporate owners. The court said:

"But it is further insisted that, while the immunity statute may protect individual witnesses, it would not protect the corporation of which appellant was the agent and representative. This is true, but the answer is that it was not designed to do so. The right of a person under the 5th Amendment to refuse to incriminate himself is purely a personal privilege of the witness. It was never intended to permit him to plead the fact that some third person might be incriminated by his

testimony, even though he were the agent of such person. A privilege so extensive might be used to put a stop to the examination of every witness who was called upon to testify before the grand jury with regard to the doings or business of his principal, *whether such principal were an individual or a corporation. The question whether a corporation is a 'person' within the meaning of this amendment really does not arise*, except, perhaps, where a corporation is called upon to answer a bill of discovery, since it can only be heard by oral evidence in the person of some one of its agents or employees. The amendment is limited to a person who shall be compelled in any criminal case to be a witness against *himself;* and if he cannot set up the privilege of a third person, he certainly cannot set up the privilege of a corporation. \* \* \*" (First emphasis supplied.) Hale v. Henkel, 201 U.S. 43, 69–70, 26 S.Ct. 370, 377.

■ It is my conclusion, therefore, that the subpoena does not violate the Fourth or Fifth Amendment.

Other district court cases must be considered. One is in direct conflict with this holding. It is In re Subpoena Duces Tecum, D.C.N.D.Cal.1948, 81 F.Supp. 418.[13] There the court without

12. See Footnote 1, supra.

13. In re Subpoena Duces Tecum could be distinguished on the ground suggested in United States v. Onassis, D.C.D.C. 1954, 125 F.Supp. 190, the difference between the small and personal nature of the partnership as emphasized in that case and the less personal, more widespread enterprise here before the court.

Here, Simpson, Spence & Young is a large enterprise. Under the New York law and its agreement, it operates with important characteristics of a legal entity. It is a seventy-five year old organization. It maintains offices in London and Glasgow, as well as New York. Its agreement provides that it shall not dissolve on the death or retirement of any member but continue at the option of the remaining partners. In case of

death or retirement of a partner, payment is made of a sum of money representing the value of that partner's share. Nothing is allowed him for good will; this asset accrues to the benefit of the partnership.

The partnership, as a principal asset, holds stock of and manages Texas Transport and Terminal Company, Inc., a corporation maintaining its offices in eleven Atlantic and Gulf ports. Upon withdrawal or death of a partner, he is not entitled to demand stock of the corporation. Rather, his share is paid in cash unless the remaining partners, at their option, give him stock instead.

The firm has eight general members and two limited partners. The two largest shares combined exceed fifty percent. Waters, the partner subpoenaed, has the largest share. Augen-

any supporting authority, generalized that partnership records were personal records of the individual partners within the Fourth Amendment and held that one partner could not be subpoenaed to produce them if they would incriminate another partner. Its view of the partnership relationship seems to be inapplicable to the New York Partnership Law. Its suggestion that relief from self-incrimination is broader under the Fourth Amendment than the Fifth; that this protection may be accorded to one other than the person subpoenaed; and that Hale v. Henkel, supra, was not applicable to agents producing partnership records equally with those producing corporate records are contrary to my impression from reading the Supreme Court opinions on the subject.[14]

United States v. Brasley, D.C.W.D. Pa.1920, 268 F. 59, may also be in conflict with my holding but it is believed that the basis for its suppressing subpoenaed partnership records was that a forthwith subpoena was used as an attempted validation for an actual physical intrusion and seizure.

United States v. Lawn, D.C.S.D.N.Y. 1953, 115 F.Supp. 674, 677, decided by Judge Goddard in this district is distinguishable. There an indictment was dismissed because four men already charged by information with tax violation were permitted, without waiving immunity, to testify before a grand jury investigating the same subject matter as to which they were already charged with crime. The principal question turned upon the compulsion of their oral testimony. The fact that certain records were subpoenaed belonging to partnerships in which some of the defendants were members was incidental to the oral testimony and the court's language as to the private nature of these records was a dictum based upon In re Subpoena Duces Tecum, supra, and United States v. Brasley, supra, which, as I have indicated, I decline to follow. Judge Goddard did not hold or suggest that one partner could claim self-incrimination with respect to records produced by another. In dismissing the indictment no distinction among the defendants was made on the basis of membership in the partnerships or production of records.

In United States v. Onassis, supra, D.C.D.C.1954, 125 F.Supp. 190, Judge Youngdahl, in the criminal proceeding arising from the same transactions which are the basis for the present civil action, held that the production before the grand jury of records of Simpson, Spence & Young, the partnership here concerned, through Waters, the partner here under subpoena, did not violate Augenthaler's constitutional rights. Obviously I agree with the conclusion, but upon the additional grounds I have stated. Judge Youngdahl reached his conclusion by distinguishing Simpson, Spence & Young from smaller more intimate partnerships,[15] an extension of the analysis used by the Supreme Court in United States v. White, supra, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542.[16] If Waters had not received immunity and it were a case of his claiming his own privilege as to partnership documents he was required to produce, as in United States v. Lawn, supra, then we would be confronted with the problem analogous to United States v. White, supra, where the person incriminated by the documents of an unincorporated association was the very person subpoenaed to produce them, and his claim of privilege was denied because they were held to be not his private papers. Here, however, there is no claim of personal incrimination of the person under subpoena. Here we have a much simpler

---

thaler, the partner incriminated, has one of the smallest, substantially less than a one-eighth equal share.

14. See Footnote 1, supra.

15. See Footnote 13, supra.

16. See also Haywood v. United States, 7 Cir., 268 F. 795, 804, certiorari denied 1921, 256 U.S. 689, 41 S.Ct. 449, 65 L. Ed. 1172; United States v. Field, 2 Cir., 1951, 193 F.2d 92, 97.

question which may be disposed of under the simpler test of Hale v. Henkel: Augenthaler, not being compelled to do anything, is not being compelled to incriminate himself.

On the major ground, I completely agree with Judge Youngdahl. The liberties of individual citizens will not be advanced by ascribing them to business combinations.[17] By attempting to spread the protection granted the records of an individual to cover records shared with others as an incident of a formal business combination the quality of the protection will be adulterated and corrupted.[18] Whether or not the Supreme Court was actually thinking in terms of partnerships in United States v. White, supra, 1944, 322 U.S. 694, 64 S.Ct. 1248, its opinion constitutes a general warning against extending to combinations those complete and impenetrable protections we wish to hold for our private thoughts and our private writings.

The partnership also requests that the production of the records be delayed until after the criminal trial of Augenthaler. On the contrary, the public interest requires that both cases proceed as rapidly as possible. If in fact government ships have been obtained by fraud, they should not be left in the hands of the perpetrators of the fraud, regardless of what arrangement may be made for the sequestration of their earnings. The issue should be promptly determined. What evidence should or should not be received in the criminal trial is the problem of the court in which that action is pending. It has adequate power to protect Augenthaler if it is shown that any record produced under the subpoena now in question was obtained in unlawful disregard of his rights.

Motion denied.

17. In United States v. White, supra, 322 U.S. 694, at pages 700–701, 64 S.Ct. 1248, at page 1252, the court said:.
"The reason underlying the restriction of this constitutional privilege to natural individuals acting in their own private capacity is clear. The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible. See Hale v. Henkel, supra, 201 U.S. 70, 74, 26 S.Ct. 377, 379, 50 L.Ed. 652; 8 Wigmore on Evidence, 3rd Ed., § 2259a. The framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations.

"The fact that the state charters corporations and has visitorial powers over them provides a convenient vehicle for justification of governmental investigation of corporate books and records. Hale v. Henkel, supra; Wilson v. United States, supra. But the absence of that fact as to a particular type of organization does not lessen the public necessity for making reasonable regulations of its activities effective, nor does it confer upon such an organization the purely personal privilege against self-incrimination. Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the privilege against self-incrimination being limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records."

18. Cf. Cardozo, J., People v. Chiagles, 1923, 237 N.Y. 193, 197, 142 N.E. 583, 584, 32 A.L.R. 676:
" * * * We are not to strain an immunity to the point at which human nature rebels against honoring it in conduct. * * * "