.In the Matter of **UNITED STATES** of America, Petitioner-Appellee,

v.

**Harry G. SILVERSTEIN**, Respondent-Appellant.

No. 229, Docket 27886.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1962.

Decided March 12, 1963.

Jules Ritholz, New York City (Raymond Rubin, John H. Hammer, Corcoran, Kostelanetz, Gladstone & Lowell, and Lurie & Rubin, New York City, on the brief), for respondent-appellant.

Anthony H. Atlas, Asst. U. S. Atty., So. District of New York (Robert M. Morgenthau, U. S. Atty., on the brief), for petitioner-appellee.

Before WATERMAN, MOORE, and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

This is an appeal from an order of the District Court for the Southern District of New York, Harold R. Tyler, Jr., Judge, granting the motion of the United States pursuant to 26 U.S.C. §§ 7402(b) and 7604 for an order enforcing an Internal Revenue summons duly served upon the appellant. We have held such orders appealable. In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2 Cir., 1953), cert. denied Cincotta v. United States, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104. United States v. Thomas McDonald, 2 Cir., 1963, 313 F.2d 832. This summons directed appellant to produce enumerated books and records of New York limited partnerships of which he was a general partner, in connection with an investigation of his tax liabilities for prior years. At the time of the issuance of the summons, there were five such partnerships (one is now defunct but this is not claimed to influence decision) each owning rental real estate. There are three general partners in each: appellant, his son, and his son-in-law.

**790**

The limited partners number from about 25 to 147. The partnerships, plus a management company, are housed in a single office under the complete control of the three general partners. Capitalization for the four presently existing partnerships totals upwards of five million dollars. Appellant claims that the order directing him to comply with the summons is an invasion of his constitutionally-protected right to decline to give evidence against himself, and must be reversed. Though we find the question not free from difficulty, we cannot agree that the personal privilege has been invaded and we affirm the order.

An appearance before a Special Agent is in the nature of an appearance in a criminal investigation, in which a claim of privilege against a summons directing production of individual papers would be sustained. See Russo v. United States, 241 F.2d 285, 286 n. 1 (2 Cir., 1957). On the other hand, it is now settled that one who holds corporate papers in a representative capacity may not successfully claim privilege when required to produce them. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). This refusal to extend the historic scope of the privilege beyond direct individual protection is grounded on an assumption that in granting the corporation limited liability, the state confers upon it a quasi-public character, reserving to itself among other rights a right of visitation and inspection of corporate papers. Moreover, the individual is said to hold the papers in a "representative capacity" rather than personally, so that the claim of the personal privilege against self-incrimination is not available. In the unusual case, however, these rationalia may be inapplicable. See Application of Daniels, 140 F.Supp. 322 (S.D.N.Y.1956). Appellant presents us with the intermediate case of one who seeks to interpose his personal privilege against a direction to produce papers of a limited partnership, in his possession as general partner.

Although the original decision establishing the applicability of the constitutional protection to the papers and records of the individual, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), in fact dealt with a subpoena requiring the production of partnership papers, the problem here presented has never been discussed by the Supreme Court. A consistent approach does not emerge from the decisions of other federal courts. The following cases have held that a partner holding records to which a subpoena is directed may claim privilege. United States v. Linen Service Council, 141 F.Supp. 511 (D.N.J. 1956); United States v. Lawn, 115 F. Supp. 674 (S.D.N.Y.1953); In re Subpoena Duces Tecum, 81 F.Supp. 418 (N. D.Cal.1948); United States v. Brasley, 268 F. 59 (W.D.Pa.1920). In the next group of cases, the privilege was not thought to invalidate the subpoena. United States v. Wernes, 157 F.2d 797 (5. Cir., 1946); United States v. Onassis, 133 F.Supp. 327 (S.D.N.Y.1955); United States v. Onassis, 125 F.Supp. 190 (D.D. C.1954). However, applicable legal principles can be found in other decisions by the Supreme Court dealing with the validity of the defense of privilege when raised by those holding the documents of other types of unincorporated associations. It has several times been held that the records of such an association may be possessed in a representative capacity, as with a corporation, so that a claim of personal privilege is unavailable. See McPhaul v. United States, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960) (Civil Rights Congress); Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) (Communist Party); United States v. Fleischman, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906 (1950) (Joint Anti-Fascist Refugee Committee). A particularly applicable discussion of the problem may be found in United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), a decision dealing with an assertion of privilege by an officer of a labor union local concerning papers he held. The Court succinctly

stated the criteria to be applied: "The test, rather, is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only." The labor union "represents organized, institutional activity as contrasted with wholly individual activity" and its officers may therefore claim no personal privilege regarding production of its records in their keeping. The inquiry is, therefore, essentially a factual one into the nature of the particular entity.

In a limited partnership, the limited partners have the right to have the partnership books kept at the principal place of business, and to inspect and copy them. New York Partnership Law, McKinney's Consol. Laws, c. 39, § 99. There is an almost identical provision for ordinary partnerships. New York Partnership Law § 41. The limited partners thus cannot be assimilated to the status of mere creditors, at least as regards the books and records of the partnership. Once the limited partners are thought of as having an interest in the organization, it becomes unrealistic to say that these partnerships, some having over one hundred limited partners, embody "purely private or personal" interests of the appellant in the meaningful sense, rather than a "common or group interest." Nor can we agree that these entities are "small" family businesses, even though their sole managers are the related general partners. Through the use of the limited partnership device, the funds of many people have been gathered into common enterprises of considerable size. This would hardly have been possible without the privilege of limited liability, which was granted by the state to the limited partners in return for compliance with, among other provisions, a filing requirement. See New York Partnership Law §§ 90, 91. The choice of this form of business organization was necessarily an election to submit to a greater degree of governmental intervention than would be true of a simple common-law partnership, and to more closely approximate the corporate form. We would hardly hesitate to hold corporations with a like number of shareholders as there are limited partners here and equivalent capitalizations to be of such nature as to permit no claim of privilege to be raised by a corporate officer on behalf of corporate papers. For practical purposes, the limited partners are in no different position from small corporate shareholders; the general partners may be considered as officers. It is not necessary to decide that the analogy to the corporate form is close enough to imply the same right of visitation for all limited partnerships as has been implied for corporations. It is enough to say that the extensive operations involving large numbers of people and large amounts of money which the appellant directs are of such type that the interests of the partners in common far dominate any personal interest that the appellant may have in the partnership books and records. Of course, when one man, or one small family group, as in this case, control, manage and keep the books of corporations, limited partnerships or other entities, the management actions under scrutiny are individual to the extent that any criminality revealed by the books is brought home to the one required to produce. As to him, the privilege against self-incrimination has been destroyed in order that the actions of the business or other entity might be made the object of public scrutiny. We see no escape from the conclusion that the doctrine which has been developed by the Supreme Court illustrated by the White case requires the enforcement of the subpoena here, although it points up perhaps more forcefully than the earlier cases the extent of the exception to the privilege opened up by the doctrines of submission to governmental supervision and representative possession of group records relied on in the corporate, unincorporated association and labor union cases. Under the White case the size and extent of the operation

here plus the close analogy to the corporate form lead us to conclude that appellant cannot assert his personal privilege to prevent the goverment from inspecting the books and records of the partnership that he holds.

The order is affirmed.