In the Matter of **UNITED STATES** of
America, Petitioner,

v.

**Harry G. SILVERSTEIN, Respondent.**

United States District Court
S. D. New York.

Jan. 13, 1965.

Robert M. Morgenthau, U. S. Atty., for
the S. D. New York for petitioner; Stephen Charnas, Asst. U. S. Atty., of counsel.

Corcoran, Kostelanetz & Gladstone,
New York City, for respondent; Boris
Kostelanetz, Jules Ritholz, Raymond Rubin, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge:

The Government has moved for an order pursuant to sections 7402(b) and 7604 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7402(b) and 7604, directing respondent Harry G. Silverstein to produce books and records set forth in an Internal Revenue summons served upon him pursuant to section 7602 of the code, 26 U.S.C. § 7602. The summons was issued in connection with an investigation of Silverstein's tax liability and directed that he produce the books and records of nine real estate syndicates in which he was a participant.

Silverstein has already been directed by this court to produce the books and records of five of these syndicates, which were cast in the form of limited partnerships, and in each of which he was one of the three general partners who managed the partnership business. United States v. Silverstein, 210 F.Supp. 401 (S.D.N.Y.1962), aff'd, 314 F.2d 789 (2 Cir.), cert. den., 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1031 (1963). He has produced these books and records as well as those of two other syndicates listed in the summons. However, he has refused to produce the books and records of the two remaining syndicates Motel City B Associates and Motel City C Associates, which are cast in the form of general partnerships, and in both of which Silverstein was one of three "managing partners." The present motion is to compel him to produce the Motel City B and Motel City C books and records.

Silverstein asserts that he may not be required to produce these partnership papers because he has invoked his privilege against self-incrimination under the Fifth Amendment. The Government, on the other hand, takes the position that in substance the Motel City B and Motel City C syndicates are identical in all relevant respects to the five syndicates involved on its prior motion against Silverstein, and that the decision in that case governs here.

In the first Silverstein case the Court of Appeals held that the criteria to be applied to determine whether a real estate syndicate cast in partnership form is of such a nature as to afford fifth amendment privilege to one of its managing partners is that spelled out by the Supreme Court in United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944):

> "The test, * * * is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only."

As the Court of Appeals said in applying this test, "the inquiry is, * * * essentially a factual one into the nature of the particular entity." 314 F.2d at 791.

When this motion was first argued before me I found that the papers then submitted did not contain sufficient information about the nature, organization and operation of the Motel City B and Motel City C syndicates to enable me to apply the standard of the White case in the manner prescribed by the Court of Appeals. I therefore requested the parties to supply additional factual material, and they have done so. After consideration of all the material now before me I find no differences between the syndicates cast in the form of general partnerships involved here and the similar syndicates cast in the form of limited partnerships involved on the prior motion that are of significance in the context of the fifth amendment privilege here asserted.

Here, as in the prior case, through the partnership device "the funds of many people have been gathered into common enterprises of considerable size." 314 F.2d at 791.

Here, as there, Harry G. Silverstein, the respondent, Larry A. Silverstein, his son, and Bernard H. Mendik, his son-in-law, were the managing partners.

In the prior case the smallest syndicate had 25 limited partners and the largest 147. Here there are 17 general partners, denominated as "non-managing" partners, in addition to the three managing partners.

The capitalization of the smallest of the syndicates on the prior motion was $225,000. Here the capitalization of Motel City B is $720,000 and of Motel City C $1,015,500.

As was the case before, the offices of Motel City B and Motel City C are in the same offices as Harry G. Silverstein & Sons from which respondent conducts his apparently extensive real estate operations.

The partnership books of all the syndicates are to be kept by the managing partners at the principal place of business of the syndicates with free access to all partners, limited or otherwise. N. Y. Partnership Law, McKinney's Consol. Laws, c. 39, §§ 41, 99.

The functions of the managing partners of Motel City B are described in the brochure issued to attract investors in the following language:

> "The Managing Partners will run the business of the Partnership. However, consent of a majority in interest of all Partners shall be required for a sale of the property or refinancing of the mortgage, provided the Managing Partners are a part of such majority."

The functions of the managing partners in the syndicates involved in the first case were substantially the same, and consent of 60% of the limited partners was required for sale of the partnership property.

The managing partners here are given sole authority to admit new partners to the enterprise, apparently without consultation with the other partners. In the Motel City B partnership agreement it is provided that such additional partners "shall each make a cash contribution in the sum of $72,000, or multiples

thereof, or such lesser proportionate fractional amounts as the managing partners may determine, until cash capital contributions in the total sum of $648,000 shall have been received by the partnership." There is a similar provision in the Motel City C agreement.

In terms of the characteristics deemed of significance by the Court of Appeals in the prior case, the two enterprises involved here bear a striking resemblance to the enterprises before the court then.

The one difference between them on which Silverstein relies to distinguish this case from the prior case is that the syndicates there were cast in the form of limited partnerships, whereas those here are cast in the form of general partnerships. Silverstein contends that this difference requires a different result here.

It may be noted, however, that although there were only three general partners, respondent Silverstein, his son and his son-in-law, in the prior case, there are 20 general partners here. Whatever the personal interest of Silverstein, as one of three general partners, in the partnership books in the previous case, his personal interest in the partnership books here is even further diminished by the increased interest of the 17 additional general partners. Thus, if he held the partnership books in merely a representative capacity in the prior case, he must necesarily have done so here.

Silverstein urges that the additional partners in the general partnership here have more comprehensive rights and assume greater responsibilities than the limited partners in the five limited partnerships. If respondent could derive any comfort from the distinction which he seeks to draw, it would be of little aid to him in the light of the unusual position given to the non-managing general partners in Motel B and Motel C by the partnership agreements. Of course, speaking generally, it is true that a partner in a general partnership, even though he be inactive, is personally liable for partnership debts, whereas a limited partner risks only his capital in the enterprise. Compare New York Partnership Law, § 26 with New York Partnership Law, § 96. But under the Motel City B and Motel City C agreements, if there are sufficient partnership assets to satisfy creditors, all of the non-managing partners have priority in the distribution of income and assets. Moreover, three of the non-managing partners in Motel City C have been given indemnification agreements by Silverstein and the other two managing partners to protect them against claims of creditors.

At least one non-managing partner in each partnership has made partial assignments of portions of his partnership interest pursuant to New York Partnership Law, § 53. In Motel City B one of the partners made six such partial assignments, and the partnership distributed income and principal directly to the six assignees pursuant to authorization forms which the partnership provided. In fact, this non-managing partner was admitted to the partnership upon the understanding by at least one of the managing partners that such assignments would be made.

These partial assignees are not partners at all and are thus not personally liable for the partnership debts. Plainly they have some property rights in all the partnership assets, including its books and records. But they have even less of a partnership interest in them than did the limited partners in the prior case. In addition, under New York Partnership Law, § 53(1) such partial assignees had no right "to interfere in the management or administration of the partnership business or affairs."

The deposition of Dollinger, one of the non-managing partners in Motel City B was taken by the parties. It was stipulated that if a non-managing partner from Motel City C was examined, his testimony would be substantially the same. No other testimony as to the participation by the non-managing partners in the affairs of the enterprises was adduced and no doubt Dollinger's evidence can be taken as typical.

It was plain from Dollinger's testimony that the management of the business of the partnership was solely in the hands of the managing partners, and that he was merely an investor. Indeed, he did not even know who the other non-managing partners were. His sole participation in partnership affairs was to attend three or four meetings when the partnerships were in dire financial straits and to make his views known there. Even respondent agrees that were Dollinger merely a limited partner such participation would not constitute taking "part in the control of the business" so as to make him liable as a general partner under § 96. See Continental Nat'l Bank v. Strauss, 17 N.Y.S. 188 (Sup.Ct. N.Y.City 1892), aff'd, 137 N.Y. 148, 553, 32 N.E. 1066 (1893).

Silverstein also urges that the so-called doctrine of "submission to governmental supervision" cannot be used to bar the privilege against self-incrimination to a general partner who has custody of the books of a general partnership. This doctrine, which originated in the cases withholding the fifth amendment privilege from corporate papers, Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), was predicated on the theory that a corporation, having accepted the special privileges conferred upon it by the state, thereby elected to submit itself to the state's visitorial powers. The privilege was thus deemed waived both by the corporation and by its officers so that such powers could be properly exercised.

Although the Court of Appeals discussed the application of this doctrine to the real estate syndicates in the first Silverstein case, its decision was not primarily based on that doctrine. As the court said (314 F.2d at 791):

> "It is not necessary to decide that the analogy to the corporate form is close enough to imply the same right of visitation for all limited partnerships as has been implied for corporations. It is enough to say

that the extensive operations involving large numbers of people and large amounts of money which the appellant directs are of such type that the interests of the partners in common far dominate any personal interest that the appellant may have in the partnership books and records."

This was in accord with what the Supreme Court said in the White case (322 U.S. at 700–701, 64 S.Ct. at 1252):

> "The fact that the state charters corporations and has visitorial powers over them provides a convenient vehicle for justification of governmental investigation of corporate books and records. Hale v. Henkel, supra; Wilson v. United States, supra. But the absence of that fact as to a particular type of organization does not lessen the public necessity for making reasonable regulations of its activities effective, nor does it confer upon such an organization the purely personal privilege against self-incrimination. Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the privilege against self-incrimination being limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records."

Thus, the Court of Appeals did not rest its decision in the first Silverstein case primarily on the doctrine of "submission to governmental supervision," and even if that doctrine is inapplicable here that fact would be no more determinative than it was in the White case.

In the light of all the evidence before me it can fairly be said that the Motel City B and Motel City C real estate syndicates are of "a character so impersonal in the scope of * * * [their] membership and activities that * * * [they] cannot be said to embody or rep-

resent the purely private or personal interests of * * * [their] constituents, but rather to embody their common or group interests only." Compare United States v. Onassis, 133 F.Supp. 327 (S.D. N.Y.1955), and United States v. Onassis, 125 F.Supp. 190 (D.D.C.1954), (privilege denied where partnerships respectively consisted of 8 general partners and 2 limited partners, and 7 general partners and 4 limited partners, and did a large international business), with In re Subpoena Duces Tecum, 81 F.Supp. 418 (N. D.Cal.1948), (privilege allowed in small family partnership). Accordingly the Government's motion must be granted, and Silverstein will be directed to produce the books and records of the two real estate syndicates described in the summons.

Settle order on notice.