538 F.2d 325
 76-2 USTC P 9519
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
United States of America and Billy J. Sauls, Special Agent
of the Internal Revenue Service, Appellees
v.
Charles Lee Harrison, Jr., Appellant.
 No. 76-1255.
 United States Court of Appeals, Fourth Circuit.
 June 29, 1976.
 
 Before WINTER, CRAVEN and BUTZNER, Circuit Judges.
 
 PER CURIAM
 
 1
 Charles Lee Harrison, Jr., appeals from a judgment finding him in contempt as a result of his refusal to comply with a district court order enforcing an Internal Revenue Service's (IRS) administrative summons. 26 U.S.C. Sec. 7602. Harrison contends that 26 U.S.C. Secs. 7402(b) and 7604(a) are unconstitutional, and he claims that he is not guilty of contempt because the production of any information or documents pursuant to the summons would violate his Fifth Amendment rights. We affirm in part and vacate in part.
 
 
 2
 I. On August 20, 1975, Special Revenue Agent Billy J. Sauls served a summons on Harrison ordering him to appear on September 2, 1975, to testify and produce for examination books, records, and other papers relating to any loans or property transactions Harrison had made with Steven V. and/or Patsy Y. Harrison for the years 1969-1973. Harrison failed to appear on the appointed date.
 
 
 3
 Pursuant to 26 U.S.C. Sec. 7604, Special Agent Sauls then filed with the district court a "Petition to Enforce the Internal Revenue Summons," and attached an affidavit stating that Harrison's testimony and the requested documents were necessary for a determination of the correct tax liability of Steven V. and/or Patsy Y. Harrison. The district court on November 17, 1975, ordered Harrison to appear before Special Revenue Agent Sauls on December 19, 1975, and show cause why he should not be compelled to testify and produce the records demanded of him in the summons. Harrison also failed to appear on this date.[1]
 
 
 4
 On December 29, 1975, the court entered an order to show cause why Harrison should not be adjudged in contempt for refusal to comply with the order entered on November 19. Harrison was ordered to appear before the district court on January 9, 1976. In response to this order, Harrison filed a pro se motion to dismiss the summons, claiming that if enforced it would force him to violate his Fifth Amendment privilege against self-incrimination.
 
 
 5
 Harrison appeared before the district court on January 9, 1976 and at that time again stated that he would neither testify nor produce any of the documents sought by the IRS, standing on his Fifth Amendment privilege. Stating that Harrison had failed to show good cause for his failure to comply with the summons, the district court entered an order requiring him to produce the required documents and answer Agent Sauls' questions on January 12, 1976. In addition, the district court stated that if Harrison failed to comply with the terms of its order, he was to appear before the court on January 14 and show cause why he should not be adjudged in contempt. On January 12, Harrison appeared for interrogation by the IRS, but as to each question put to him by Special Agent Sauls he refused to answer on Fifth Amendment grounds. Harrison did not produce the requested documents at this meeting, nor did he state why these records if produced would have a deleterious effect.
 
 
 6
 Because of Harrison's failure to comply fully with the terms of the January 9 order, the district court held an evidentiary hearing on January 14, 1976, to determine whether Harrison should be found to be in contempt. At this hearing, Special Agent Sauls testified that Harrison's tax liability was not under investigation, nor had any criminal prosecution against him been recommended by the Service. Sauls further stated that Harrison's refusal to furnish the documents stemmed from a desire to protect his brother, Steven V. Harrison, and from his belief that the tax system was a Communist conspiracy.
 
 
 7
 Harrison testified at the hearing, again contending that submission of the documents to the IRS would violate his Fifth Amendment rights. The district court requested Harrison to submit the designated documents for an in camera inspection, which Harrison refused to do. As a result, Harrison was adjudged to be in contempt by his refusal to testify fully at the IRS meeting of January 12, 1976, and for his refusal to produce the requested documents for an in camera examination. Enforcement of the contempt order was stayed pending this appeal.
 
 
 8
 II. We dismiss as legally frivolous Harrison's contention that 26 U.S.C. Secs. 7402(b) and 7604(a), the provisions vesting the district court with authority to enforce the administrative subpoena, are unconstitutional. See Couch v. United States, 409 U.S. 322 (1973); United States v. Ahmanson, 415 F.2d 785 (9th Cir.1969). We turn then to the claimed Fifth Amendment defense.
 
 
 9
 It is well settled that the Fifth Amendment privilege is available to a person who appears before an Internal Revenue Service agent pursuant to 26 U.S.C. Sec. 7602. United States v. Silverstein, 314 F.2d 789 (2 Cir.), cert. denied, 374 U.S. 807 (1963). The standard utilized in determining the applicability of the privilege is whether the claimant has reasonable cause to believe that the information sought might tend to incriminate him. Hoffman v. United States, 341 U.S. 479, 486 (1951); Rogers v. United States, 340 U.S. 367, 374 (1951). The claimant, however, is not the final arbiter as to whether the testimony or documents requested will result in the hazards of incrimination. Hoffman v. United States, supra, at 486. Rather, it is for the court to determine whether the silence is justified.
 
 
 10
 Consequently, where a Fifth Amendment objection is raised by a claimant, his remedy is not to voice a blanket refusal to produce his records or to testify. As was stated in United States v. Roundtree, 420 F.2d 845, 852 (5th Cir.1969):
 
 
 11
 Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense. The district court may then determine by reviewing ... [the witness'] records and by considering each question whether, in each instance, the claim of self-incrimination is well founded.
 
 
 12
 In the instant case, there is no indication in the record that the real purpose of the IRS investigation was to secure information for use in a criminal or civil prosecution against Harrison. Harrison made no showing that the production of all the requested documents would result in an injurious disclosure. See United States v. Ponder, 475 F.2d 37, 39 (5th Cir.1973); In Re Turner, 309 F.2d 69 (2nd Cir.1962). Under the circumstances of this case, where there has been a failure by the appellant to indicate how production of the documents would violate his Fifth Amendment rights and where the IRS investigation is not focused on the individual tax liability of Harrison, an in camera inspection of the requested documents does not vitiate Harrison's protection against self-incrimination. We note that this procedure has been utilized by courts in an effort to safeguard an individual's constitutional rights, see United States v. Nelson, 511 F.2d 1132, 1133 (4th Cir.1975); United States v. Johnson, 465 F.2d 793, 794 (5th Cir.1972), and we find that the district court's adjudgment of Harrison to be in contempt for failure to comply with this procedure was proper.
 
 
 13
 Harrison, however, was also cited for contempt for his refusal to provide testimony to IRS agents at the meeting ordered by the court for January 12, 1976. At that meeting, except to state his name, address and that he was the brother of Steven V. Harrison, appellant claimed his Fifth Amendment privilege against self-incrimination with regard to each question.
 
 
 14
 At the contempt hearing held on January 14, 1976, the district court failed to determine whether the invocation of Harrison of his Fifth Amendment privilege was proper as to each question put to him by Agent Sauls at the January 12 meeting, prior to holding him in contempt. It is clear that Harrison could only be held in contempt for his refusal to testify where it clearly appeared that he had erroneously claimed the privilege. To sustain the privilege, "it need only be evident from the implications of the question, in the setting in which it [was] asked, that a responsive answer to the question or an explanation of why it [would not] be answered might be dangerous ..." Hoffman v. United States, supra at 486-87.
 
 
 15
 We therefore remand for a determination by the district court of the applicability of the privilege as to each question asked of Harrison at the IRS meeting of January 12, 1976. An inquiry with respect to each question will safeguard Harrison's constitutional guarantees and dispel any false concepts about the privilege Harrison might hold. Daly v. United States [68-1 USTC p 9323], 393 F.2d 873, 877-78 (8th Cir.1968). If the district court determines that Harrison's objections are not warranted, reasons should be provided so that Harrison may reconsider his response prior to the district court's holding him in contempt for failure to testify.
 
 
 16
 Accordingly, the order of the district court holding Harrison in contempt for failure to produce the requested documents is affirmed. As to the district court order finding him in contempt for failure to testify, the order of the district court is vacated in part and the case remanded for proceedings consistent with this opinion.
 
 
 17
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 [1]
 At a hearing held by the district court on January 14, 1976, Harrison explained that he failed to appear on December 19, 1975, because he was in the hospital, and submitted to the court a bill from the hospital to corroborate his claim